STATE OF VERMONT

ENVIRONMENTAL COURT

|                                           |   |                          |
|-------------------------------------------|---|--------------------------|
| In re Tanguay Storage Unit Project        | } | Docket No. 149-7-09 Vtec |
| (Appeal of Mayhew, et al.)                | } |                          |

Decision and Order on Appellants' Motion for Partial Summary Judgment

Appellants David Mayhew, Debra Mayhew, Carlton Billado, Ila N. Starr, Jason Mayhew, Amy Burns, Karen Johnson, and Henry Johnson (Appellants) appealed from decisions made at the June 29, 2009 meetings of the Planning Commission and the Zoning Board of Adjustment (ZBA) of the Town of Troy, which granted Appellee-Applicant Anthony Tanguay (Applicant) approval to construct a storage-unit facility. Appellants are represented by Thomas G. Walsh, Esq.; Applicant has appeared and represents himself; and the Town is represented by Sara Davies Coe, Esq.

Appellants have moved for partial summary judgment on Questions 1, 2, 3, and 9 of the Statement of Questions, which ask the Court to determine whether the proposed project: (1) complies with the objectives of the Rural zoning district, as set forth in § 205.1 of the Town of Troy Zoning Bylaw (Zoning Bylaw)[1]; (2) complies with § 205.1 in that the proposed use is neither a listed permitted use nor a listed conditional use for the district; (3) complies with § 205.1 in that the proposal does not comply with the lot area and dimensional requirements for the district; and (9) complies with § 301 of the Zoning Bylaw in that the proposed use is not an allowed use in the district. The facts stated in this decision are undisputed unless otherwise noted.

_____

[1] Section 205.1 of the Zoning Bylaw actually appears in the Zoning Bylaw as "Table 205.1." However, for the sake of uniformity and ease of reference, this decision will refer to that provision as "Section" or "§" 205.1.

<u>Factual Background</u>

Applicant owns a 0.86-acre parcel of property, identified as Parcel # 070035, located on the west side of Route 101 in the Rural zoning district of the Town of Troy. See Zoning Bylaw § 201 (Zoning Map and Districts); <u>id</u>. § 205.1 (Rural Zoning District).[2]

On May 18, 2009, Applicant submitted Zoning Permit Application # 23-09 (the permit application) to the Zoning Administrator. The application seeks approval to construct a two-building self-storage facility on Applicant's property.[3] On the permit application, Applicant characterized the "proposed use" for the project as a "conditional use mini warehouse" use. Applicant proposes to construct two 25′ by 120′ buildings to house a total of sixty individual storage units. Applicant intends to rent out the individual storage units "for storing personal property." Those who rent the storage units will be able to access their units twenty-four hours a day, seven days a week, year round; no fencing or controlled access is proposed. The project plans provide twelve parallel parking spaces around the periphery of the drive aisles, and provide space in front of each rental storage unit for loading and unloading. Applicant also proposes to install five exterior lights on each of the two buildings, for a total of ten recessed fluorescent downward-type fixtures.

Under the Zoning Bylaw, Applicant was required to obtain site plan approval from the Planning Commission for the proposed project, as well as conditional use approval from the ZBA, prior to receiving a final zoning permit from the Administrative Officer. See Zoning Bylaw § 208 (governing site plan review by the Planning Commission); <u>id</u>. § 207 (governing conditional use review by the ZBA). Both the Planning Commission and the ZBA held hearings on the permit application on June

---

[2] The Zoning Bylaw was adopted in 1985 and last amended in 1987.

[3] Although the space on the application form to describe the "proposed construction" states "see project overview," no additional project narrative has been provided to the Court.

2

29, 2009; however, the parties have not provided the published warnings for the meetings, and the minutes of the meetings do not refer either to site plan approval or to conditional use approval.[4]

The project was first discussed at the Planning Commission portion of the meeting. The Planning Commission minutes read in full as follows:

> Permit # 23-09 Submitted by Tony Tanguay to construct two 25['] x 120['] Storage units on VT RTE 101. Discussion – Tony has already been approved by the state for the access point off RTE 101 and is going to install an 18" culvert, there will be recessed lighting and motion lights that will not run continuously throughout the night, and a sign will be constructed 20 ft from the front setback line. A lot of concern was raised from abutting land owners and surrounding neighbors for having a storage unit in a rural setting. People will be accessing the units at night, dust, hazardous material being stored, possible extra[-]curricular activity and heavier traffic. Tony stated that his rental agreement is designed to prevent most of these concerns. Motion to move to Zoning – Irene/Approved.

As indicated in the last sentence of the minutes, the Planning Commission voted only to "move" the matter to be considered by the ZBA. If site plan approval of the project under § 208 of the Zoning Bylaw was even before the Planning Commission at the June 29, 2009 hearing, it was not voted on by the Planning Commission. Appellants' Statement of Questions does not raise any issues regarding site plan approval under § 208 of the Zoning Bylaw.

At the ZBA portion of the hearing, the ZBA "approved" the project. However, the minutes of the ZBA meeting do not mention the term "conditional use approval" or refer to the conditional use standards found under § 207 of the Zoning Bylaw. The ZBA minutes read in full as follows:

---

[4] The minutes from both of the June 29, 2009 meetings indicate that the Planning Commission and the ZBA are composed of the same individuals, and that the meeting proceeded directly from the Planning Commission meeting to the ZBA meeting.

Permit #23-09 Storage unit application submitted by Tony Tanguay was further discussed – Tony agreed to add more trees to the landscape for a barrier to the adjoining properties. Let it be known in the minutes that eight people are opposed to this project. Motion to approve the permit under the conditions that a total of thirty cedar trees are planted around the property lines – Ed/Approved

Decisions made by a municipal panel are required by state statute to be in writing, and must "include a statement of the factual bases on which the . . . panel has made its conclusions[,] and a statement of the conclusions." 24 V.S.A. § 4464(b)(1). The statute allows the minutes of a Planning Commission or ZBA meeting at which a decision is made to serve as the written decision, provided that the required "factual bases and conclusions relating to the review standards" are included in the minutes. Id.

With respect to the project on appeal, the Planning Commission minutes make a few factual findings, but make no conclusions relating to the site plan review standards, assuming that what the Planning Commission had before it was the task of site plan review under § 208 of the Zoning Bylaw. The ZBA minutes contain neither any factual findings nor any conclusions, and they do not relate to the conditional use review standards in § 207.1 or 207.2 of the Zoning Bylaw.[5]

---

[5]  The complete lack of conclusions relating to the review standards in both decisions, as well as the complete lack of findings in the ZBA decision, could potentially warrant a remand even though this is a de novo proceeding, based on both decisions' noncompliance with 24 V.S.A. § 4464(b)(1). See, e.g., In re: Dufault Variance Application, No. 129-6-07 Vtec, slip op. at 2–4 (Vt. Envtl. Ct. Oct. 24, 2007) (Wright, J.) (Where a DRB decision "is entirely deficient under 24 V.S.A. § 4464(b)(1)," in that it does not include any factual findings, the proper remedy is "to vacate the decision and to remand it to the DRB" where "[i]t will be up to the DRB in the first instance whether to reopen the hearing or whether simply to make findings and conclusions based on the evidence taken at the original hearing."). However, Appellants have not raised this issue in their Statement of Questions.

<u>Overview of Zoning Provisions Applicable to the Present Motion</u>

As the project parcel at issue in this appeal is located in the Rural zoning district, it is governed primarily by § 205.1 of the Zoning Bylaw. That provision states that the "objective" of the Rural zoning district is "[t]o provide for medium density development of various types while maintaining the natural qualities and rural character of the Town." Zoning Bylaw § 205.1.

Section 205.1 also lists the permitted and conditional use categories allowed in the Rural zoning district. No party argues that any of the permitted use categories are applicable to the proposed project. Conditional uses are those that may be approved by the ZBA "after public notice and hearing," if the ZBA determines that the proposed use satisfies the criteria enumerated in § 207 of the Zoning Bylaw. See <u>id</u>. § 207.1–207.2 (listing the conditional use criteria the ZBA applies to a conditional use application).

As shown in the table at § 205.1 of the Zoning Bylaw, the following twelve conditional uses are allowed in the Rural zoning district: (1) airport, (2) multi-family dwelling, (3) essential service, (4) lodging facility, (5) neighborhood retail store, (6) office, (7) personal services, (8) private club, (9) public facility, (10) quarry, (11) recreational facility, and (12) warehouse. Section 205 of the Zoning Bylaw provides that any use category "not designated by [the Zoning] [B]ylaw as a 'Permitted Use' or a 'Conditional Use' shall be deemed to be prohibited."

Section 205.1 of the Zoning Bylaw also sets the minimum developable lot area within the Rural zoning district at one acre. <u>Id</u>. However, if a lot does not meet the minimum lot area of one acre, it may still be developed if it falls under the exception for "Existing Small Lots" found in § 301 of the Zoning Bylaw. See also 24 V.S.A. § 4412(2) (requiring municipal ordinances to provide for this exception). Under § 301 of the Zoning Bylaw, a lot that was in existence prior to the adoption of the Zoning Bylaw "may be developed for the purposes permitted in the district in which it is located even though not conforming to minimum lot size requirements, if such lot is not less than

5

one-eighth acre in area with a minimum width or depth dimension of forty feet." Id. § 301.

Question 1: Whether Proposed Project Complies with Objective of Rural Zoning District

Question 1 of the Statement of Questions asks whether the proposed project "complies with" the objective of the Rural zoning district, which is "[t]o provide for medium density development of various types while maintaining the natural qualities and rural character of the Town." Id. § 205.1. This "objective" derives from the same statement on page 9 of the "updated" Town Plan.[6]

Appellants claim that the proposed self-storage facility will violate this objective, arguing that it is "out of character with the rural residential area," that it "will detract from the natural qualities and rural character of [the] upscale, well-landscaped and [well]-maintained residential area," and that it "will seriously devalue the surrounding residential properties." Appellants' Motion for Summary Judgment, at 6 (Dec. 16, 2009).

However, nothing in the Zoning Bylaw makes the statement of the Rural district's "objective" found in § 205.1, or the equivalent statement from the Town Plan, into an enforceable regulatory provision. Under Vermont law, a municipality's zoning ordinance can require compliance with statements in the municipal plan or elsewhere in the zoning ordinance, see In re Appeal of JAM Golf, LLC, 2008 VT 110, 185 Vt. 201 ¶¶ 16–19 ("[C]ities may require subdivisions to conform to their city plan" as long as there is a "specific policy set forth in the plan," and the policy is "stated in language that is clear and unqualified, and creates no ambiguity." (citation omitted)); however, nothing in the Town of Troy Zoning Bylaw does so for the statements of "objective" found in

---

[6] The Town Plan provided by both parties states on page 1 that the original plan was adopted in 1995, but does not provide an adoption date for what it refers to as "this updated version."

6

§ 205.1 and the Town Plan.

Without any requirement in the Zoning Bylaw that a project must comply with the district "objective," it is a "hortatory, not [a] regulatory provision[]." Appeals of Perrine, Nos. 221-12-03 Vtec & 38-3-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 30, 2004) (Wright, J.) (citing Appeal of Baribault, No. 165-9-98 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 29, 2000) (Wright, J.); Kalakowski v. John A. Russell, 137 Vt. 219, 225–26 (1979)). Regardless of whether the ZBA or the Planning Commission is or is not "directed to consider" this objective when applying the Zoning Bylaw, it is "not mandatory." In re: Walsh d/b/a Deerwood Estate Conditional Use Application, No. 122-6-09 Vtec, slip op. at 16 (Vt. Envtl. Ct. Dec. 9, 2009) (Wright, J.) (quoting Perrine, Nos. 221-12-03 Vtec & 38-3-04 Vtec, slip op. at 6). Although such a statement of objective may "provide a guide or context to the administration of the [zoning ordinance]," in the present case it is "not independently enforceable just as the provisions of a municipal plan are not independently enforceable." Id.

Therefore, even though the objective in § 205.1 may inform the decisions of the ZBA or Planning Commission in making decisions regarding properties in the Rural zoning district, and hence may inform this Court in this de novo appeal, it has no independent regulatory effect. Accordingly, summary judgment must be entered in favor of Applicant on Question 1 of the Statement of Questions, as the Zoning Bylaw does not require proposed projects to "comply" with the statement of the district's "objective" contained in § 205.1.[7]

---

[7] See V.R.C.P. 56(c)(3) (stating that "[s]ummary judgment when appropriate may be rendered against the moving party"); see also Alpine Haven Property Owners Ass'n, Inc. v. Deptula, 2003 VT 51, ¶ 21, 175 Vt. 559 (reiterating that "V.R.C.P. 56(c)(3) specifically authorizes the court to issue summary judgment against the moving party when appropriate").

Question 3: Whether Proposed Project Complies with Minimum Lot Area

Question 3 of the Statement of Questions asks whether the proposed project complies with the lot area and dimensional requirements for the Rural zoning district, found in § 205.1 of the Zoning Bylaw. The parties have not moved for summary judgment on Question 10 of the Statement of Questions, which addresses more specifically whether the proposal complies with the dimensional requirements of § 205.1 relating to frontage and setbacks; with respect to Question 3 they have only addressed the issue of lot area. Accordingly, under Question 3 the Court only addresses the project's compliance with the lot area requirement found in § 205.1 of the Zoning Bylaw.

The minimum lot area in the Rural zoning district is one acre. Zoning Bylaw § 205.1. Because the proposed project parcel is only 0.86 acre in size, it does not comply with the minimum lot area requirement of § 205.1. Therefore, summary judgment must be entered in favor of Appellants on Question 3 of the Statement of Questions.

However, an undersized lot may still be developed if it qualifies as an "existing small lot" under § 301 of the Zoning Bylaw, provided that the proposed use is for the purposes allowed in the Rural zoning district. The issue of whether the proposed project qualifies for the exception found in § 301 is discussed under Question 9, below.

Questions 2 and 9: Whether the Proposed Project is an Allowed Use in the District

Question 2 of the Statement of Questions asks whether the proposed project complies with § 205.1 of the Zoning Bylaw "in that the proposed Project's use is neither Permitted [n]or Conditional." Question 9 asks whether the proposed project complies with § 301 of the Zoning Bylaw, that is, whether it fails to qualify for the existing-small-lot exemption from the lot size requirements, "in that the proposed Project's use/purposes is not permitted in the district."

8

The parties do not dispute that the proposed use is not a permitted use in the district, nor do they dispute that the application before the Court in this appeal is one for conditional use. Therefore, the only issue presented under Questions 2 and 9 is whether the proposed use falls within a conditional use category allowed in the Rural zoning district. If Applicant's proposed use does not fall within an allowed conditional use category under § 205.1 of the Zoning Bylaw, then conditional use approval cannot be granted, and the proposed project also would not qualify for the existing-small-lot exemption from the minimum one-acre lot area under § 301 of the Zoning Bylaw.

Unlike the zoning ordinances of some municipalities, the Town of Troy Zoning Bylaw does not provide a "catch-all" conditional use category that allows the ZBA to approve non-listed uses that are of the same general character as a listed use specifically allowed in a particular district.[8] Instead, the Zoning Bylaw enumerates specific conditional uses that are allowed in each district, and specifically provides that "[a]ny use not designated by this bylaw as a 'Permitted Use' or a 'Conditional Use' shall be deemed to be prohibited." Zoning Bylaw § 205.

Of the twelve conditional use categories allowed in the Rural zoning district, the only use category that Applicant argues is applicable to the proposed project is the use category of "warehouse." The Zoning Bylaw defines the term "warehouse" in full as "[i]ncludes warehouse, wholesale establishment, discount house, bulk storage and bulk

---

[8] See, e.g., Appeal of Stohl, No. 98-6-04 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 8, 2005) (Durkin, J.) (discussing the "catch-all conditional use category" in the Town of Braintree Zoning Ordinance, which permits conditional use approval of "[o]ther uses upon the determination by the [ZBA] that such use is of the same general character [as] other uses in the District, is consistent with the purposes of the District, and is compatible with adjoining land uses"); In re: Appeal of Goldschmid, No. 96-6-01 Vtec, slip op. at 8, n.11 (Vt. Envtl. Ct. Dec. 27, 2002) (Wright, J.) ("Under §241.9 [of the Town of Westminster Zoning Ordinance], any 'use not provided for' first must go before the [Planning Commission] for a finding that the use is of the same general character as those allowed within the district and that the proposed use will not be detrimental to the other uses within the district or to the adjoining land uses.").

sales outlet." Id. § 502. Applicant argues that, by the use of the word "includes," the definition is meant "not to preclude uses which are sufficiently similar to those named or which may not have even been in existence at the time of the adoption of the bylaws." Appellee's Response to Motion for Summary Judgment, at 1 (Jan. 13, 2009).

Applicant does not claim that his proposed self-storage facility is a "wholesale establishment," a "discount house," a "bulk storage" facility, or a "bulk sales outlet." Rather, he argues that it should be considered to be a type of "warehouse," or a similar type of use to that of a "warehouse," thereby allowing it to be considered for conditional use approval as a "warehouse" use.

In interpreting and applying regulatory provisions, such as the definitions found in § 502 of the Zoning Bylaw, the Court approaches construction of a zoning ordinance in the same manner as statutory interpretation. In re Krag Special Zoning Permit for Culvert, No. 51-4-09 Vtec, slip op. at 9 (Vt. Envtl. Ct. Mar. 10, 2010) (Wright, J.) (citing In re Williston Inn Group, 2008 VT 47, ¶ 14, 183 Vt. 621). As with a statute, the Court's "overall goal is to discern the intent of the drafters," first and foremost "by reference to the plain meaning of the regulatory language." Williston Inn Group, 2008 VT 47, ¶ 10. See also, e.g., Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129 ("[T]he bedrock rule of [regulatory] construction is to determine and give effect to the intent of the [drafters]." (quoting In re C.S., 158 Vt. 339, 343, 609 A.2d 641, 643 (1992))).

All five of the uses listed in the definition of the term "warehouse" appear to be establishments that either store inventory or goods to be sold ("warehouse" and "bulk storage" facility), sell commercial inventory or goods to retailers ("wholesale establishment"), or sell in quantity or in bulk to retail customers ("discount house" and "bulk sales outlet").[9] The uses listed in the definition of "warehouse" all relate to large-

---

[9] The Court notes that, unlike many zoning ordinances, the definitions sections of the Town of Troy Zoning Bylaw, §§ 501 and 502, do not refer the reader to use the common or dictionary meaning of terms not specifically defined.

scale, commercial sales or storage operations that are controlled by a business and are presumably open only during defined business hours.

By contrast, the main purpose of Applicant's self-storage facility is for personal use by individuals to store their own personal, home business, or household property. Unlike the listed uses, the proposed project will be open twenty-four hours a day, seven days a week, with no controls on access to the property by unauthorized individuals. The state statute governing "Commerce and Trade" specifically distinguishes such self-storage facilities renting out individual units from the term "'warehouse' as used in Article 7 of the Uniform Commercial Code (U.C.C.) as codified in Title 9A." 9 V.S.A. § 3901(6). That statute specifically defines "self-storage facility" as "any real property designed and used for the purpose of renting or leasing individual storage space to occupants who are to have access to such space for the purpose of storing and removing personal property." Id. Thus, even if the definition of the term "warehouse" in § 502 of the Zoning Bylaw were to allow consideration of uses similar to the uses listed in the definition, Applicant's proposed use is not of the same general character as those listed, and therefore cannot be considered for conditional use approval under the use category of "warehouse."

In any event, a careful analysis of the definitions provided in § 502 of the Zoning Bylaw indicates that the use category of "warehouse" is defined by an exclusive list and was not intended to incorporate any non-listed uses, regardless of whether such non-listed uses are of the same general character as those listed.[10]

The definition of the use category "warehouse" in § 502 of the Zoning Bylaw does not provide a dictionary-type definition of the term; rather, it provides only a list,

---

[10] For a discussion of another municipal zoning ordinance in which the drafters "distinguished between definitions by example, and definitions which contain an exclusive list," see In re Appeal of Spencer, No. 24-2-98 Vtec, slip op. at 4 (Vt. Envtl. Ct. May 17, 1999) (Wright, J.).

introduced by the word "includes." In order to determine whether the list as used in the definition of "warehouse" is an exclusive list, or whether it was meant to provide only a nonexclusive list of examples, it is necessary to examine the structure of the other definitions in § 502 of the Zoning Bylaw. Many of those definitions simply provide a description of the term, as in a dictionary, without providing examples or using the word "includes" in any of its grammatical forms.

The definitions of those use categories in § 502 of the Zoning Bylaw that do use the term "includes" (or "including") use it in several different ways. Unlike the definition of "warehouse," several definitions in § 502 first also provide a dictionary-type definition of the use, but amplify that definition by a list of examples that are included in (or excluded from) the definition. One such definition is of the use category "public facility," which is first defined as "[u]sage by agencies and departments of local, county, state and federal government," followed by a list of examples that are intended to fall within the category: "[i]ncludes auditorium, theater, public hall, school hall, meeting hall, . . . ."[11] Another example from § 502 of a definition that is followed by a list of examples is the use category of "retail sales & service." This use category is first defined as "[s]hops and stores for the sale and servicing of retail goods and products," but is followed by a nonexclusive list of examples of uses that fall within the definition: "including restaurants, personal service shops and department stores." It is apparent from the structure of this type of definition that the list of examples is a nonexclusive list, because many other non-listed examples of retail sales and services fall within the definition but are not listed, such as sporting goods stores or bakeries. That is, if a proposed use fits within the initial definition, it will fall within the defined use category, regardless of whether it is specifically listed in the list of examples.

---

[11] This list actually expands the use category of "public facility" beyond the scope of its initial definition, by adding the examples of "church or temple" to the list, as a church or temple is not a use that can be carried on by a government agency.

Also unlike the definition of "warehouse," some of the use categories defined in § 502 explicitly incorporate non-listed uses that are similar to the uses listed in the definition. Such definitions incorporate the non-listed uses by the phrases "including, but not limited to" or "including similar [uses or services]." One such definition is of the use category of "health care facility," which is defined as a facility or institution that is principally engaged in providing health care services, "including, but not limited to" a long list of different types of hospitals, nursing facilities, and laboratories.[12] Another such definition defines the use category of "essential service" to cover the infrastructure installed by municipalities or by public utilities for "gas, electrical, steam[,] or water transmission, including" a long list of different types of equipment (such as pipes, wires, fire hydrants and traffic signals), "and similar equipment and accessories."

Unlike the definitions described above, only two of the use categories defined in § 502 are defined solely by a list of examples; these are the definitions for the use category of "personal service" and that of "warehouse."[13] Each of these definitions begins with the word "includes" and is followed only by a list, without providing any dictionary-type definition. "Personal service" is defined in full as "[i]ncludes barber, hairdresser, beauty parlor, shoe repair, shoe shine, laundry, laundromat, dry cleaner, photographic studio, and businesses providing similar services of a personal nature." Zoning Bylaw § 502 (emphasis added). Even when defining solely by a list, in defining the use category of "personal service" the drafters of the ordinance specified that it was a nonexclusive list by concluding the list with the open-ended description "businesses providing similar services of a personal nature."

By contrast, the definition of "warehouse" states only that it "[i]ncludes

---

[12] In addition, the definition of "health care facility" also specifically excludes from the list of types of health care institutions those that "provide healing sole[l]y by prayer."

[13] The definition of "recreational facility" also begins with "includes." However, that definition neither defines the term nor provides a list; rather, it simply states that the category applies to both "indoor" and "outdoor" recreational facilities.

warehouse, wholesale establishment, discount house, bulk storage[,] and bulk sales outlet." Unlike all the other definitions that reflect the intent of the drafters of the ordinance to include other similar uses, discussed above, the definition of "warehouse" covers only the listed uses. Because it is an exclusive list, it does not include self-storage facilities.

Therefore, summary judgment must be entered in favor of Appellants on Question 2 of the Statement of Questions, as the proposed self-storage use does not fall within any of the permitted or conditional use categories allowed in the Rural zoning district. Similarly, summary judgment must be entered in favor of Appellants on Question 9 of the Statement of Questions, as Applicant's lot does not qualify for the "existing small lot" exemption under § 301 of the Zoning Bylaw because the proposed use is not an allowed use in the district.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED as to Questions 2, 3, and 9 of the Statement of Questions, denying conditional use approval and concluding this appeal. Appellants' Motion for Summary Judgment is DENIED as to Question 1 of the Statement of Questions; on that question summary judgment is GRANTED in favor of Applicant.

Done at Berlin, Vermont, this 7th day of April, 2010.

_____
          Merideth Wright
          Environmental Judge

14