2008 VT 47

**In re WILLISTON INN GROUP**

[949 A.2d 1073]

No. 07-120

*Katz, J.*

¶ 1. April 11, 2008. Taxpayer Williston Inn Group appeals from a determination of the Commissioner of Taxes assessing meals-and-rooms taxes based on rents paid for the first thirty days of stays by long-term guests at its extended-stay hotel. Taxpayer argues that the Commissioner based the assessment on an erroneous interpretation of the governing regulation. We disagree, and therefore affirm.

¶ 2. The parties stipulated to the following facts. Taxpayer owns and operates the

---

Marriott TownePlace Suites, an extended-stay hotel in Williston, Vermont. The hotel is duly licensed as a hotel by the State of Vermont Department of Health pursuant to 18 V.S.A. §§ 4351-4358, and by the Town of Williston pursuant to 9 V.S.A. §§ 3061-3063. According to the parties, the hotel also complies with all other requirements of Vermont law applicable to hotels. For instance, it keeps the guest register required by 9 V.S.A. § 3101 and gives notice of the availability of its safe for the safe-keeping of money, jewelry, and valuable papers and articles belonging to its guests pursuant to 9 V.S.A. § 3141.

¶ 3. The hotel offers accommodations with separate living, working and sleeping areas as well as fully equipped kitchens. In addition, each suite is equipped with a sofa bed, free high-speed internet access, separate telephone and data lines, a television, personalized voice mail, and other predictable items. The hotel's amenities include an exercise room, indoor pool, vending machines, twenty-four-hour staffing, housekeeping services, on-site fax, copy and printing services and a coin-operated laundry. Guests are also welcome to use a computer terminal and printer located in the hotel lobby, as well as safe deposit boxes.

¶ 4. Taxpayer's rates for suites are quoted on a per-night basis. The pricing varies with the length of stay and is tiered as follows: one rate for stays of one to four days, a lower rate for stays of five to eleven days, an even lower rate for stays of twelve to twenty-nine days, and, with a few exceptions, the lowest rate for stays of thirty days or more. In some cases, the hotel offers negotiated, discounted rates to corporate and government entities based upon forecasted volume, and these may be lower than the tiered rates. Taxpayer often makes direct billing arrangements with companies and governmental agencies in the case of planned stays in excess of thirty days.

¶ 5. Taxpayer does not charge guests the meals-and-rooms tax on the first thirty days of occupancy for stays exceeding thirty days. When an occupant who has checked in for a stay of thirty days or more fails to stay for at least thirty days of that previously agreed stay, taxpayer's practice is to increase the room rate for each night of that stay, and to impose the meals-and-rooms tax on the total, increased rates paid for the duration of the stay.

¶ 6. All of the guests who occupied suites for any number of nights at the hotel during the period of time relevant to this suit did so pursuant to documentation consisting of: (1) a reservation printout providing terms including the date of arrival and the departure date, the type of accommodation, a nightly rate quote, a term that advised that the rate is based upon continuous length of stay and that early departure may result in rate change, and other terms relating to the penalties for cancellation; (2) a registration card or slip attached to the reservation printout and signed by the guest, indicating the type of suite, the suite number, arrival and departure dates, the rate, and that the rate is based upon continuous length of stay and that early departure may result in an upward rate adjustment; and (3) for those who made reservations online, an email confirmation. Other than these three documents, there were no written agreements between the hotel and its guests.

¶ 7. Taxpayer treats the documentation as imposing an obligation on the hotel to provide the indicated accommodations to the guest for the period noted in the reservation and at check-in. It also treats the documentation as imposing an obligation on the guest to take and pay for the indicated accommodations at the stated rate for the period noted or, if the guest makes a reservation for but does not stay for at least thirty days, to pay an increased rate, plus meals-and-rooms tax,

for the entire portion of the initial thirty days used.

¶ 8. Any person with the ability to pay the room rate may arrive at the hotel without a reservation and rent a room for any term, subject only to availability. Any such guest would be required to take a suite under the same terms as one who has made an advance reservation. At the time a reservation is made, taxpayer does not guarantee any guest any particular suite. Upon check-in and the signing of the registration card with the attached reservation printout, an occupant is assigned to a specific suite. The hotel does not charge any of its guests a security deposit. On occasion, guests who fail to pay for their rooms have been locked out of their rooms by the management or employees of the hotel; the hotel represents that it has taken such action solely for the purpose of inducing discussions concerning payment arrangements.

¶ 9. The statutory and regulatory framework is as follows. All rentals of hotel rooms in Vermont are presumptively subject to the meals-and-rooms tax. 32 V.S.A. § 9241(a). The tax is not due, however, when the occupant is a "permanent resident" of the hotel. *Id.* § 9202(6). A "permanent resident" is defined by statute as "any occupant who has occupied any room or rooms in a 'hotel' for at least thirty consecutive days." *Id.* § 9202(7). Tax Department Regulation 1.9202(7)-1 further clarifies the term "permanent resident." It provides in pertinent part as follows:

> The term "Permanent Resident" includes the following:
>
> (a) Occupants for more than thirty days. A person who occupies any room in a Hotel for more than thirty consecutive days becomes a Permanent Resident effective as of the thirty-first day and will continue to be considered a Permanent Resi-

dent thereafter as long as Occupancy remains continuous and uninterrupted . . . . Since qualification as a Permanent Resident under this subsection is not effective until the person has occupied a room or rooms in a Hotel for thirty consecutive days, Rent from the first thirty days of Occupancy is subject to rooms and meals tax.

> (b) Occupants under leases covering more than thirty days. A person who has a right to occupy a room for more than thirty days pursuant to a pre-existing lease is considered a Permanent Resident for the entire period of Occupancy pursuant to such lease, and no meals and rooms tax is payable with respect to any rent paid or received under such lease.

Tax Department Regulation 1.9202(7)-1, 1 Code of Vermont Rules 10 060 023-2.

¶ 10. Following an audit, the Department of Taxes assessed taxpayer for meals-and-rooms tax on the unreported first thirty days of long-term stays at its hotel for a nearly three-year period. In addition to the $74,172.44 tax due, the Department assessed penalties and interest; the interest continues to accrue. Taxpayer timely appealed the tax assessments to the Commissioner. Taxpayer asserted that the guests upon whose first thirty days of long-term stays at the hotel the Department sought to impose the meals-and-rooms tax were "permanent residents" under Regulation 1.9202(7)-1(b) and, accordingly, that their occupancies were not subject to the meals-and-rooms tax. Specifically, taxpayer argued that under subsection (b) of the regulation, guests who sign hotel registration cards indicating that they plan to occupy the accommodations for more than thirty days are subject to leases, and their oc-

cupancies are therefore exempt from the tax for their entire stay. The Commissioner affirmed the assessment, ruling that the registration cards are not leases because they do not create landlord-tenant relationships between the hotel and its guests. Taxpayer appealed to the Chittenden Superior Court. The superior court denied taxpayer's appeal, reasoning that taxpayer's guest registration cards were not leases, but rather an "option" to occupy a room without any obligation on the part of taxpayer's guests to pay for an entire leased term. This appeal followed.

¶ 11. This Court reviews the Commissioner's decision directly, independent of the conclusion on the intermediate, on-the-record appeal of the superior court. See *Devers-Scott v. Office of Prof'l Regulation*, 2007 VT 4, ¶ 4, 181 Vt. 248, 918 A.2d 230. And, out of respect for the "expertise and informed judgment" of agencies, *In re Twenty-Four Electric Utilities*, 160 Vt. 227, 233, 627 A.2d 355, 359 (1993) (quotation omitted), and in recognition of our proper role in the separation of· powers, *Town of Victory v. State*, 2004 VT 110, ¶ 16, 177 Vt. 383, 865 A.2d 373 ("[t]o preserve the appropriate separation of judicial and executive powers, we presume that judicial review of administrative decisions is deferential."); see also *In re Prof'l Nurses Serv.*, 2006 VT 112, ¶ 12, 180 Vt. 479, 913 A.2d 381 (applying deferential standard in recognition of a broad legislative delegation to an administrative agency), we apply a deferential standard of review to agency decisions. See, e.g., *Gasoline Marketers of Vt., Inc. v. Agency of Natural Res.*, 169 Vt. 504, 508, 739 A.2d 1230, 1233 (1999) ("[A]bsent a clear and convincing showing to the contrary, decisions made within the expertise of administrative agencies are presumed to be correct, valid, and reasonable."). The Commissioner's decisions are no exception. See *Town of Killington v. Dep't of Taxes*, 2003 VT 88, ¶ 5, 176 Vt. 70, 838 A.2d 91 (applying deferential stan-

dard to Commissioner's choice of methodology used to determine Town's property tax).

¶ 12. We have long extended this principle of deference to agency interpretations of statutes which the Legislature has entrusted to their administration. See, e.g., *Town of Killington v. State*, 172 Vt. 182, 192, 776 A.2d 395, 403 (2001); *In re Agency of Admin.*, 141 Vt. 68, 74, 444 A.2d 1349, 1351 (1982). Thus, absent compelling indication of error, we uphold the Commissioner's interpretation of tax statutes. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999) (citing *Burlington Elec. Dep't v. Dep't of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 453 (1990)). We owe at least as much deference when, as in this case, we review the Commissioner's interpretation of Department regulations. See *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 10, 179 Vt. 214, 892 A.2d 191 ("Absent compelling indications of error, interpretations of administrative regulations or statutes by the agency responsible for their execution will be sustained on appeal." (quotation omitted)); see also *In re Verburg*, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992) ("[W]e employ a deferential standard of review for an agency's interpretations of its own regulations.").[1]

---

[1] Taxpayer does not argue that the tax regulation at issue is contrary to 32 V.S.A. § 9202(7). Rather, taxpayer argues only that the Commissioner misinterpreted the regulation. In a single paragraph toward the end of taxpayer's appellate brief, taxpayer does make the conclusory statement that the Commissioner's reading of the regulation is "without regard to the legislative purpose," and "contrary to the legislative intent." However, taxpayer does not attempt to establish what the legislative intent was. Moreover, the above language is sandwiched between arguments regarding *regulatory* intent, and under the argument heading "The Com-

¶ 13. Taxpayer argues that our review of this case should be de novo. Specifically, taxpayer claims that this Court should not defer to the Commissioner's construction of the word "lease" because the courts, and not the Commissioner, have expertise in interpreting such "contractual" terms. We do not agree. Taxpayer's argument ignores the fact that we defer to agency interpretations of their own regulations "as much out of a concern for the proper separation of powers as in consideration of agency expertise." *In re Albert*, 2008 VT 30, ¶ 6, 183 Vt. 637, 954 A.2d 1281 (mem.); see also *Town of Victory*, 2004 VT 110, ¶ 16 (explaining that deference to agencies "preserve[s] the appropriate separation of judicial and executive powers"); *In re Prof'l Nurses Serv.*, 2006 VT 112, ¶ 12 (applying deferential standard in recognition of a broad legislative delegation to an administrative agency). Moreover, we do not agree with taxpayer that the Commissioner has no special expertise concerning the meaning of "lease" as it appears in Regulation 1.9202(7)-1(b). In *Travelers Indemnity Co. v. Wallis*, we reasoned:

The Legislature has entrusted the administration of the workers' compensation laws to the Commissioner [of the Department of Labor and Industry], and the Commissioner necessarily has developed expertise in this administration. As a result, we give deference to the Commissioner's interpretation . . . of the workers' compensation laws.

2003 VT 103, ¶ 14, 176 Vt. 167, 845 A.2d 316. Our reasoning in *Travelers* applies with at least equal force to this case. The Department of Taxes not only administers, but also drafted Regulation 1.9202(7)-1(b). Thus, the Commissioner has necessarily developed expertise in its administration, and, accordingly, we extend deference to his reading of its terms.[2]

missioner's Interpretation Undermines [t]he Purpose of the *Regulation* . . . ." Finally, at oral argument, taxpayer conceded that the regulation was valid and confirmed that it was not challenging the validity of the regulation. As such, we are at a loss to determine whether taxpayer is making a statutory argument at all, and, if so, what that argument is. We therefore reserve for another day the question of whether Regulation 1.9202(7)-1 is consistent with § 9202(7), and limit our review to the question of whether the Commissioner's interpretation of the regulation was reasonable. See *Johnson v. Johnson*, 158 Vt. 160, 164, n.*, 605 A.2d 857, 859 n.* (1992) (this Court will not consider arguments not adequately briefed); V.R.A.P. 28(a)(4) (setting out requirements for arguments in appellate briefs).

_____

[2] We note that one of the cases taxpayer cites in support of its standard-of-review argument is in some tension with our reasoning. See *Devers-Scott*, 2007 VT 4, ¶ 9 (holding that attorney-administrative law officer's lack of expertise in midwifery justified departure from rule of deference with regard to his interpretations of the midwifery statutes and rules). *Devers-Scott* is distinguishable from the case at bar, however. Suffice it to say that the separation-of-powers implications flowing from plenary review of an administrative law officer's construction of statutes and regulations are less significant than those at issue when reviewing the regulatory interpretation of the head of an agency. The balance of authority cited by taxpayer does not advance taxpayer's argument. See *Town of Victory*, 2004 VT 110, ¶ 17 (explaining that separation-of-powers principles require presumption against plenary review of agency action); *State v. Brooks*, 2004 VT 88, ¶ 8, 177 Vt. 161, 861 A.2d 1096 (reviewing de novo statutory construction by su-

¶ 14. The sole issue on appeal is therefore whether there are compelling indications that the Commissioner's construction of the word "lease" was wrong. We approach regulatory construction in the same manner as we do statutory interpretation. *In re 1650 Cases of Seized Liquor*, 168 Vt. 314, 319, 721 A.2d 100, 104 (1998) ("We apply the same rules of statutory construction to a regulation as we do to a statute."). "In interpreting regulations, our overall goal is to discern the intent of the drafters." *Conservation Law Found. v. Burke*, 162 Vt. 115, 121, 645 A.2d 495, 499 (1993). When we can, we accomplish this by reference to the plain meaning of the regulatory language; other tools of construction are available to us should the plain-meaning rule prove unavailing. *Slocum v. Dep't of Soc. Welfare*, 154 Vt. 474, 478, 580 A.2d 951, 954 (1990).

¶ 15. After noting that the Department has not adopted a definition of the word "lease," the Commissioner reasoned that leases are generally defined as " '[a]ny agreement which gives rise to relationship of landlord and tenant (real property) or lessor and lessee (real or personal property).' " (quoting Black's Law Dictionary 889 (6th ed. 1990)). The Commissioner went on to note that a lease must contain four essential terms: "(1) the names of the parties; (2) a description of the leased property; (3) a statement of the lease's duration or term, and (4) the amount of the rent." The Commissioner concluded that taxpayer had failed to make a showing that its registration cards created landlord-tenant relationships between the hotel and its guests so as to

require a departure from the general rule that hotel guests are considered lodgers subject to licenses rather than tenants subject to leases. See M. Friedman & P. Randolph, Jr., Friedman on Leases § 37:3 (2d ed. 2005) (reciting general rule). Having come to this conclusion, the Commissioner did not go on to analyze whether taxpayer's arrangements with its guests included the four essential terms of a lease.[3]

¶ 16. Taxpayer has not shown us any compelling indications that the Commissioner erred in interpreting Regulation 1.9202(7)-1. The Commissioner's conclusion — that in order to be a "lease" within the meaning of 1.9202(7)-1, an arrangement must create a landlord-tenant relationship — is reasonable and does not undermine the regulatory purpose. Taxpayer does not argue that the hotel's arrangements with its guests create landlord-tenant relationships, but rather argues only that in light of the plain meaning of "lease," and the Commissioner's own statement of the regulatory purpose, the Commissioner was wrong to require such a relationship in order for taxpayer's arrangements with its guests to be considered "leases" under the regulation.

¶ 17. As taxpayer points out, the Black's Law Dictionary definition of "lease" has broadened from edition to edition. See Black's Law Dictionary 1035 (4th ed. 1951) ("Any agreement which gives rise to relationship of landlord and tenant."); Black's Law Dictionary 800 (5th ed. 1979) ("Any agreement which gives

---

perior court, not administrative agency); *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 112-13, 666 A.2d 1170, 1172 (1995) (reciting rule that Court defers to agency interpretations of statutes it has been charged with executing absent compelling indications of error); *In re Verburg*, 159 Vt. at 165, 616 A.2d at 239 (same).

---

[3] Because the Commissioner did not perform this analysis, and because we hold that the Commissioner's construction of "lease" to require the formation of a landlord-tenant relationship was reasonable and consistent with the regulatory purpose, we do not address taxpayer's arguments that its arrangements with its guests included the four essential terms of a lease.

rise to relationship of landlord and tenant (real property) or lessor and lessee (real or personal property."); Blacks Law Dictionary 889 (6th ed. 1990) (same); Black's Law Dictionary 898 (7th ed. 1999) ("A contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration, usu. rent."); Black's Law Dictionary 907 (8th ed. 2004) (same). However, we note that the Commissioner relied on the definition current as of the year the regulation became effective — 1980 — in determining the word's plain meaning. See Department Regulation § 1.9202(7)-1. It was entirely appropriate for the Commissioner to do so. See *Stowell v. Action Moving & Storage, Inc.*, 2007 VT 46, ¶ 10, 182 Vt. 98, 933 A.2d 1128 (relying on Black's Law Dictionary definition of "wages" for purposes of statutory construction); *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶¶ 28-29, 181 Vt. 225, 917 A.2d 451 (relying on Black's Law Dictionary definitions of "general" and "public" for purposes of statutory construction) (Burgess, J., dissenting). Taxpayer points out that other dictionaries define "lease" more broadly. For instance, taxpayer notes that one dictionary defines "lease" as "[a] contract granting use or occupation of property during a specified period in exchange for a specified rent." American Heritage Dictionary of the English Language 997 (4th ed. 2000). Taxpayer's observation that the Commissioner relied on the definition contained in Black's Law Dictionary rather than on those contained in the dictionaries taxpayer cites does not constitute a compelling indication that the Commissioner erred.

¶ 18. Nor are we persuaded by taxpayer's arguments that a broader definition of "lease" would be consistent with other tax statutes. Taxpayer points out that the definition of "[l]ease or rental" of *personal* property includes "any transfer of possession or control of tangible personal property for a fixed or indeterminate term for consideration." 32 V.S.A. § 9701(33). That the parties need not have a landlord-tenant relationship for the rental of personal property to constitute a "lease" is unremarkable, as the "landlord-tenant" label has traditionally applied only to leases of real property. Taxpayer's analogy to the breadth of the statutory definition of "rent" is equally unpersuasive. Taxpayer argues that because "rent" is defined broadly by statute as "consideration received for occupancy," *id.* § 9202(8), and without reference to any landlord-tenant relationship, "lease" should be broadly construed to include "any agreement that confers the right of occupancy." We fail to see the logic in taxpayer's argument. This is a case about when rents for the first thirty days of occupancies, which are normally taxed, are instead exempt because they are paid pursuant to a "lease." It is therefore of no moment that the definition of "lease," which applies only to a subset of situations in which rent is paid, is narrower than the definition of "rent."

¶ 19. Furthermore, the Commissioner's construction of "lease" is entirely consistent with the regulation's purpose. The Commissioner opined that Regulation 1.9202(7)-1(b) furthered the purpose of "acknowledg[ing] that some hotel occupancies are so akin to residential ones that they may escape taxation." The Commissioner's articulation of regulatory purpose is reasonable. We agree with the Commissioner that the consequence of taxpayer's proposed reading of "lease" would be so broad as to convert any hotel registration card into a lease. Such a construction would read subsection (a), which establishes the presumptive taxability of the first thirty days of hotel stays, out of the regulation.

¶ 20. Taxpayer accepts the Commissioner's statement of regulatory purpose as authoritative, but argues that the Commissioner's landlord-tenant-relationship

requirement contravenes it. Specifically, taxpayer argues that, under the Commissioner's ruling, no agreement between a guest and a hotel can ever qualify as a "lease." Taxpayer contends that the Commissioner's reliance on the general rule that hotel guests are typically considered lodgers subject to licenses rather than tenants subject to leases, see Friedman, *supra*, § 37:3 (reciting general rule), would preclude the Commissioner from ever concluding that there was a landlord-tenant relationship between a hotel and a guest. Taxpayer continues that the Commissioner's reliance on the general rule also ignores our holdings to the effect that contracting parties have the right to modify by agreement the terms that may arise from the common law. See, e.g., *Sherman v. Rutland Hosp., Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985). Taxpayer's argument is unpersuasive.

¶ 21. Taxpayer is wrong to suggest that under the Commissioner's interpretation long-term residents of its hotel may never be treated similarly to tenants in other residential rentals. If taxpayer wishes to rent its suites as residences, it is free to do so. It could, consistent with the regulation, enter into genuine leases with its customers and eliminate any tax-collection requirement beginning the first night of occupancy. The Commissioner's decision merely establishes that under the regulation taxpayer may not have leases without tenants. That is not to say that taxpayer is precluded from adopting arrangements with its guests that create landlord-tenant relationships. The Commissioner simply found that taxpayer failed to show that its arrangements did so. Taxpayer does not challenge this finding, and we therefore leave it undisturbed.

¶ 22. Taxpayer has failed to bring to our attention any compelling indications that the Commissioner erred in interpreting Regulation 1.9202(7)-1(b). We therefore affirm.

*Affirmed.*