2014 VT 81

## Ugo Quazzo v. Department of Taxes

[103 A.3d 458]

No. 13-205

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed August 1, 2014

*Stephen S. Ankuda* of *Parker & Ankuda, P.C.,* Springfield, for Plaintiff-Appellant.

*William H. Sorrell,* Attorney General, and *Danforth Cardozo, III,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Robinson, J.** Taxpayer appeals the superior court's decision upholding a determination by the Commissioner of Taxes that taxpayer failed to prove a change of domicile for purposes of obtaining an income-sensitive homestead property tax adjustment on his Vermont residence for the years 2007 through 2009. He argues that the Commissioner erroneously treated this case as one involving a change of domicile, rather than maintenance of domicile, so that taxpayer had the burden of proving by clear and convincing evidence that he had changed domicile to Vermont, even though he had declared — and the Department of Taxes had not challenged — his Vermont domicile years earlier. He also argues that the Commissioner's findings are insufficient to support her conclusions. We affirm.

¶ 2. The unchallenged findings, undisputed evidence, and representations of the parties reveal the following general facts. We will

describe specific facts in more detail in the course of discussion. Taxpayer's principal residence for many years was a two-bedroom New York City apartment owned since 1973 by one of the several New York family corporations of which taxpayer was president and chief executive officer. Taxpayer's son now leases the two-bedroom New York apartment from the family corporation and uses it once or twice a month. Taxpayer also stays in the apartment when he travels to New York for business or other reasons.

¶ 3. In 1958, taxpayer purchased a house in Chester, Vermont for use as a summer vacation home. Between the mid-1980s and early 1990s, he "partially retired" and began to divide his time between his New York City apartment and Chester residence. Over the ensuing years, taxpayer, who was ninety at the time of the Commissioner's decision, became less involved in running the family businesses, although he did not retire completely. At the August 2011 administrative hearing, taxpayer testified that he became a permanent resident of Vermont in 1998, but he indicated in a March 2008 letter to the Commissioner that he became a permanent Vermont resident in 2000.

¶ 4. For several years beginning in 2000, taxpayer filed homestead declarations and received an income-sensitive property tax adjustment available only to property owners domiciled in Vermont. In 2005 and 2006, he received the adjustment after the Department asked him to provide more information in support of his claimed Vermont domicile. When he filed his property tax adjustment claim in 2007, however, Department tax examiners initiated an inquiry after noticing his nearly exclusive use of his historical New York City home address and telephone and fax numbers when communicating with the Department. Subsequently, the Department denied his application for a tax adjustment for 2007, and later for 2008 and 2009, concluding that he had not demonstrated that he was domiciled in Vermont. Taxpayer appealed the denial of his applications, and a hearing officer held an administrative hearing to consider his administrative appeal of the Department's denial. Following the hearing, the Commissioner adopted the hearing officer's determination that taxpayer had failed to meet his burden of showing by clear and convincing evidence that he had changed his domicile to Vermont.

¶ 5. The Commissioner stated that the sole issue was whether taxpayer had retained his New York domicile or had changed his

domicile to Vermont for the period in question. After examining the relevant statutes and regulations, as well as the evidence submitted by the parties, the Commissioner concluded that taxpayer had failed to present clear and convincing evidence to overcome the presumption against a change of domicile.

¶ 6. In particular, the Commissioner relied on her findings that: (1) taxpayer appeared to be absent from his Chester home a good deal of the year; (2) he had his utility and property tax bills and other important documents mailed to his New York address for his personal secretary to deal with so that they would not go unattended, and he signed important documents when he was in New York, rather than in Vermont; (3) he did not explain how his situation had changed from the late 1980s and early 1990s to 1998 or 2000, the years he claimed to have made a permanent move to Vermont; (4) he continued to be active in business matters both in New York and in Vermont; (5) he had no immediate family living in Vermont; (6) he had continuing access to the apartment in New York leased by his son but available to him, and, in addition to his regular travel to Chicago, London, and San Francisco, he spent an average of one to two weeks per month in New York living in that apartment; (7) because he had transferred all of his assets to his son and relied solely on Social Security benefits and cash from his son when needed, he filed no personal state or federal income tax returns, so no income tax return address was available; (8) he did not provide a passport or any other legal document showing his declaration of the Chester home as his permanent home; (9) in 2007, the attorney for his Vermont corporation submitted a brief in a legal proceeding stating that taxpayer was a resident of New York; (10) despite being asked to do so by the Department, he failed to submit bank or credit card statements, a ready source of information that could have supported his assertion of Vermont domicile; and (11) all of his doctors are in New York.

¶ 7. The Commissioner acknowledged evidence in support of taxpayer's claim of Vermont domicile including, among other things, that taxpayer: has a longtime Vermont driver's license; has his vehicles registered in Vermont; registered to vote in Vermont beginning in 1992 and voted in Vermont at least once; testified that his family antiques, family albums, and other "near and dear" personal belongings are in Chester rather than New York; attends a church in Chester and is not a member of any New York churches or clubs; and has a Vermont bank account where he

receives his Social Security checks. However, the Commissioner noted that taxpayer had obtained the Vermont driver's license and had registered his cars in Vermont at a time when he considered his Vermont residence to be a second home — long before he claimed Vermont as his domicile — and she was skeptical of his claim that he did not keep any important personal possessions in the New York City apartment given the amount of time he spent there. Notwithstanding these findings, the Commissioner concluded that the evidence, taken as a whole, did not demonstrate taxpayer's intent to change his domicile from New York to Vermont.

¶ 8. Taxpayer appealed to the superior court, arguing among other things that the Commissioner erred by requiring him to prove by clear and convincing evidence that he had changed his domicile from New York to Vermont and by drawing conclusions that were against the weight of the evidence. In connection with the first argument, the trial court posited a hypothetical taxpayer who was not born in Vermont but moved here a number of years ago, and asked the parties, "under what circumstances would the tax department consider the taxpayer's situation to be a case about the maintenance of domicile rather than about a change of domicile?"

¶ 9. Taxpayer argued that "[a] case is only a 'change in domicile' case when the Department of Taxes challenges the *first* declaration made." Because the Department accepted his application for an income-sensitive property tax adjustment in 2000 and subsequent years, taxpayer argues, the Department was "estopped from turning back time and declaring Taxpayer a non-domiciliary for those years." Thus, according to taxpayer, the Commissioner erred by treating his situation as a change-of-domicile case rather than requiring him to show by only a preponderance of the evidence that he had maintained his previously established Vermont domicile for the years in question.

¶ 10. The State argued that the Department's Domicile Regulation, 1 Code of Vt. Rules 10 060 039, http://www.lexisnexis.com/hottopics/codeofvtrules [hereinafter Reg.], requires that a taxpayer not born in Vermont, or not born of parents domiciled in Vermont, prove a change in historical domicile by clear and convincing evidence, without regard to how long ago the change in domicile took place. The State noted, though, that as a practical matter, the longer a taxpayer has lived in Vermont, the easier it will be to make the required showing.

¶ 11. Reviewing the case on the record, the superior court found no merit to taxpayer's argument, relying on the well-settled principle that tax authorities are not estopped by their prior treatment of taxpayers' claims. See *Dixon v. United States*, 381 U.S. 68, 72-73 (1965) (stating that taxing authority may correct mistakes in application of tax laws, even when taxpayer may have detrimentally relied on those mistakes). The court concluded that applying the general rule in this case made sense because there was no showing that the Department was aware of the facts surrounding taxpayer's living arrangements at the time he filed his earlier claims. The trial court affirmed the Commissioner's decision, concluding that the Commissioner properly applied the change-of-domicile legal standard on these facts, and that in light of the Commissioner's findings, the Commissioner could reasonably conclude that taxpayer failed to show by clear and convincing evidence that he had changed his domicile.

¶ 12. On appeal to this Court, taxpayer renews his arguments that the Commissioner: (1) erroneously imposed a presumption against Vermont domicile and required him to prove by clear and convincing evidence that he had changed his domicile; and (2) failed to make sufficient findings regarding the pertinent time period and to apply the applicable statutory and regulatory standards to the findings that she did make. With respect to the Commissioner's application of the presumption, taxpayer reiterates his argument that the "change of domicile" burden only applies the first time a taxpayer files a homestead declaration, and suggests in the alternative that when the Department makes an inquiry into a taxpayer's domicile status but then allows the adjustment, as occurred in this case in 2005 and 2006, it can no longer treat the case as a change of domicile case.

¶ 13. We review the Commissioner's decision "directly, independent of the conclusion on the intermediate, on-the-record appeal of the superior court." *In re Williston Inn Grp.*, 2008 VT 47, ¶ 11, 183 Vt. 621, 949 A.2d 1073 (mem.). We apply a deferential standard of review to agency interpretations of statutes legislatively entrusted to the agency's administration, and, "[t]hus, absent compelling indication of error, we uphold the Commissioner's interpretation of tax statutes." *Id.* ¶ 12. Further, "[w]e owe at least as much deference when . . . we review the Commissioner's interpretation of Department regulations." *Id.* Finally, we will not set aside the agency's conclusions of law "if they are fairly and

reasonably supported by the findings of fact." *Piche v. Dep't of Taxes*, 152 Vt. 229, 232, 565 A.2d 1283, 1285 (1989) (quotation omitted).

¶ 14. To be eligible for an income-sensitive adjustment to the statewide school property tax, a claimant must own a homestead on April 1 of the year in which the claim is filed. 32 V.S.A. § 6066(a). At the time of taxpayer's applications for tax adjustment, "Homestead" was defined in 32 V.S.A. § 5401(7)(A) as "the principal dwelling . . . owned and occupied by a resident individual as the individual's domicile."[1]

¶ 15. ▄▄ The claimant must have been domiciled in the state for the entire tax year. 32 V.S.A. § 6066(c)(1). "Domicile" is defined in 32 V.S.A. §.5401(14) as:

> the principal dwelling of a person who has established permanent residence in the State. Intention to establish permanent residence is a factual determination to be made in the first instance by the Commissioner. No one factor is conclusive of whether a dwelling is a permanent residence; the Commissioner may consider any relevant factors, including the following: formal and informal statements of the declarant; the location of residences owned or leased by the declarant; where the declarant spends time; the declarant's place of employment and business connections; the location of items of significant value (either monetary or sentimental) to declarant; where the declarant's family lives; place of voter registration; place of issuance of automobile registration and driver's license; previous permanent residency of the declarant; and address listed on federal and State income tax returns filed by the declarant.

This Court has "defined 'domicile' . . . to mean a place where a person lives or has [a] home, to which, when absent, [s]he intends to return and from which [s]he has no present purpose to depart." See *Piche*, 152 Vt. at 232, 565 A.2d at 1285 (quotation omitted).

¶ 16. The Legislature has directed the Commissioner to adopt rules governing homestead eligibility requirements. 32 V.S.A.

---

[1] The statute was amended in June 2014 to define "Homestead" as the "principal dwelling . . . owned by a resident individual on April 1 and occupied as the individual's domicile for a minimum of 183 days out of the calendar year." 2013, No. 174 (Adj. Sess.), § 58.

§ 5410(e); see also *id.* § 3201(a)(1) (vesting Commissioner with general rulemaking authority). The Department's regulation defines domicile as "the place where an individual has a true, fixed permanent home, and to which place, whenever the person is absent, he or she has the intention of returning." Reg. § 2(a). The definition states that "[a]n individual may have several places of abode in a year, but at no time can he or she have.more than one domicile." *Id.* The regulation further provides that "[o]nce established, domicile is never lost, changed, or destroyed unless there is an actual change in the residence, together with steps manifesting an intention to abandon the former residence and acquire a new one." *Id.* § 2(c).

¶ 17. ▮ Under the regulation, the following factors are the most relevant because they are not readily changeable: (1) what residences are owned or rented by the taxpayer, including their location, their relative size and value, and how they are used; (2) where and how the taxpayer spends time during the tax year including the amount and nature of any travel and the overall pattern of residence of the individual; (3) the location of personal items that are "near and dear" to the taxpayer's heart such as family heirlooms or possessions that enhance the quality of the taxpayer's life; (4) the individual's employment, including where the individual earns a living or is actively engaged in business; and (5) where members of the individual's family reside. *Id.* § 3(a)-(e). The regulations list a host of other factors, such as place of vehicle registration and driver's license, that are relevant but less weighty. *Id.* § 3.

¶ 18. With respect to a change of domicile, the regulation states that an established domicile continues until superseded by another, so that "a change of residence without the intention of creating a new domicile leaves the last established domicile unaffected." *Id.* § 4(a). The regulation lists several other factors relevant to determining whether there has been a change of domicile, including the location of the domicile in prior years, the place of voter registration, whether the voting was by absentee ballot, the place of filing federal and state income tax returns, recitals of domicile in deeds and other legal documents, written or oral declarations of domicile, the location of bank accounts, membership in churches or clubs, and where any vehicles are registered. *Id.* § 4(b). None of these factors are deemed conclusive,

but rather are weighed in light of all of the facts and circumstances known to the Department. *Id.*

¶ 19. Regarding burden of proof, the regulation states that the individual "claiming domicile, or a change of domicile, shall carry the burden of proof," *id.* § 5(a), and that "[t]he evidence required to establish both a change of residence and the intention to effect a change of domicile must be clear and convincing" and "manifested by unequivocal acts," *id.* § 5(b).

¶ 20. ■ The critical threshold issue in this case is whether the Commissioner properly treated this as a "change of domicile" case so that taxpayer was required to prove by clear and convincing evidence an actual change of residence and an intention to change his domicile to Vermont.[2] We find no compelling indication of error in the Commissioner's interpretation of the applicable regulation. Specifically, we affirm that absent a prior adjudication by the Commissioner or a court, a taxpayer not born in Vermont or to parents domiciled in Vermont may be required to prove a change of domicile for purposes of determining eligibility for the income-sensitive adjustment to the statewide property tax. This approach comports with the plain language of the regulation, which recognizes a presumption that domicile is presumed to continue unchanged *once it is established. Id.* § 2(c). Moreover, it yields a predictable, bright-line rule that does not leave the Department or taxpayers guessing about whether they have lived in Vermont long enough to avoid the change-of-domicile framework. Although the notion that someone who has lived exclusively in Vermont for twenty years, with the intent to make Vermont his or her domicile, could be required to prove a change of domicile seems odd, the practical reality is that such a taxpayer will easily meet even the higher burden of clear and convincing proof — the passage of time and accompanying proliferation of evidence of domicile demonstrating both the change of residence and the requisite accompanying intent.

¶ 21. Taxpayer acknowledges that tax authorities "are never estopped by their prior treatment of a taxpayer's claim," but

---

[2] Taxpayer does not challenge the Department's heightened burden of proof for change-of-domicile cases. Cf. *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 254, 719 A.2d 415, 419 (1998) (concluding that university had implicit authority to adopt clear-and-convincing evidence standard of proof in residency determinations as long as constitutional rights were not implicated).

nonetheless contends that it was unreasonable for the Commissioner to impose the heavy burden of a change-of-domicile case on a taxpayer who had filed homestead declarations for several years. He contends that the Commissioner should have considered his Vermont domicile to have been previously established because he first declared his Vermont homestead in 2000 and was allowed property tax adjustments for six of the ensuing years, including two years when the Department initially questioned his domicile, sought additional information, and then allowed the adjustment after receiving the additional information.

¶ 22. ■ ■ Although taxpayer purports to eschew an estoppel argument, and does not expressly address the elements of an estoppel claim, these contentions amount to, in effect, an estoppel argument. Taxpayer essentially argues that if the Department fails to challenge a taxpayer's first homestead declaration, it forever loses the ability to challenge subsequent declarations. The argument that it is unreasonable for the Commissioner to treat this as a change-of-domicile case because the Department did not challenge his domicile in prior years is an equitable estoppel argument. Such an argument is inconsistent with well-settled law that tax authorities are not estopped by virtue of their prior treatment of a taxpayer's claims. *Dixon*, 381 U.S. at 72-73; *Auto. Club of Mich. v. Comm'r of Internal Revenue*, 353 U.S. 180, 183-84 (1957). "The mere acceptance or acquiescence in returns filed by a taxpayer in previous years creates no estoppel against the Commissioner nor does the overlooking of an error in a return upon audit create any such estoppel." *Mora v. Comm'r of Internal Revenue*, 31 T.C.M. (CCH) 495, 496 (T.C. 1972). Neither the Department's unquestioning acceptance of taxpayer's homestead declarations in prior years, nor its acceptance of the declarations after asking for clarifying information in two tax years but without any sort of adjudication, precludes the Department from formally challenging taxpayer's establishment of a Vermont domicile in subsequent years.

¶ 23. Taxpayer suggests that application of the stricter standard of review was particularly unfair in this case because it was not anticipated by the parties. Both he and the Department focused their cases on the tax years in question rather than the years when he contends he changed domiciles. Although the Department argued that taxpayer bore the burden of proving his domicile, it never suggested that this was a change-of-domicile case and that

the accompanying heightened burden applied. Taxpayer argues that the Commissioner's approach was unfair since it caught him, and apparently the Department's advocate, by surprise, but he cites no authority for the proposition that the application of the correct legal standard by an adjudicative body constitutes reversible error when it was unanticipated by the litigants.

¶ 24. Taxpayer's second argument is that the Commissioner failed to apply the applicable statutory and regulatory standards with respect to her findings and further failed to make sufficient findings to address the actual issue presented. His point here is that most of the Commissioner's findings relate to the years 2007 to 2009, despite the fact that he claimed he changed domicile to Vermont between 1998 and 2000. In taxpayer's view, the Commissioner should have examined his continuing connections to New York during the period he claimed to have changed his domicile to Vermont rather than during the period from 2007 to 2009, when his medical problems required his more frequent travel to New York.

¶ 25. We conclude that the Commissioner's findings were sufficient to support her conclusions. Taxpayer bore the burden of establishing his domicile in Vermont by proving by clear and convincing evidence that he had changed his domicile to Vermont. That includes proof that he switched domicile from New York to Vermont between 1998 and 2000. Taxpayer testified that his partial retirement began in the mid-1980s and continued into the 1990s, and that he became permanently situated in Vermont beginning in 1998, at which time he purchased a burial plot in a Chester cemetery. He also testified, however, that he never completely retired because of his role in the family businesses, and that he continued to maintain his New York contacts, particularly with respect to his businesses and his health issues.

¶ 26. In her decision, the Commissioner acknowledged taxpayer's testimony regarding his claimed change of domicile to Vermont between 1998 and 2000, but concluded that he "did not demonstrate what had changed between 1985 or 1992, when he was still a New York domiciliary, and 1998 or 2000, when he was still splitting his time between the apartment in New York and the Chester house." The Commissioner noted that taxpayer had not filed tax returns and had not produced a passport or bank and credit card statements — or other readily available evidence, including testimony from neighbors or town officials — to support

his claim of a change of domicile to Vermont during that period or later. The Commissioner pointed out, "the one official record in evidence" concerning taxpayer's declaration of domicile was in a 2007 legal brief submitted by the attorney for his Vermont family business stating that taxpayer was a resident of New York.

¶ 27. ■ The Commissioner concluded that taxpayer had failed to show by clear and convincing evidence that he had changed his domicile to Vermont. In so concluding, the Commissioner did not rely heavily upon taxpayer's relatively recent need to travel to New York more often for medical reasons. Rather, the Commissioner noted taxpayer's continued use of his historical New York apartment, his continued business contacts in New York, his continued use of the New York address for dealing with most of his correspondence and bills, and the absence of any family in Vermont. On the other side of the ledger, the Commissioner acknowledged taxpayer's ties to Vermont — his Vermont bank account where he received Social Security checks, his longtime Vermont driver's license, the registration of his vehicles in Vermont, and his Vermont voter registration, among others — but concluded that this evidence, much of which was of a type that would be consistent with vacation home ownership or could be easily altered, did not demonstrate an intent to change domicile to Vermont. Given the record before us, we conclude that the Commissioner's conclusions are fairly and reasonably supported by the findings of fact.

*Affirmed.*

¶ 28. **Skoglund, J.,** dissenting. With all due respect to the majority and the Commissioner of Taxes, the decision in this case is nonsensical. On appeal, this Court will grant deference to the Commissioner's interpretation of the tax statutes at play and will not set aside her conclusions of law "if they are fairly and reasonably supported by the findings of fact." *Piche v. Dep't of Taxes,* 152 Vt. 229, 232, 565 A.2d 1283, 1285 (1989) (quotation omitted). To afford deference to the Commissioner in this case, I would have to ignore the little voice of common sense yelling in my head. The Commissioner's conclusion that taxpayer failed to prove a change in residence from New York City to Chester, Vermont is not supported by the facts as found and should not be affirmed.

¶ 29. Taxpayer bought his home in Chester, Vermont in 1958. At that time he was still employed by the family business headquartered in New York City, where the company owns a building purchased in 1973. When working, taxpayer rented a two-bedroom apartment in the building. He partially retired in 1985 and began to split his time between the apartment in New York and his Chester home. In 1992, at the age of seventy-one, taxpayer retired more fully "but not completely," because as patriarch of the family, he is "always on call."

¶ 30. Taxpayer testified he became a permanent resident of Vermont in 1998, though in a letter to the Commissioner dated March 5, 2008 he said he became a permanent resident in 2000. Since 1992, he has been registered to vote in Vermont. He owns six cars and all have been registered in Vermont for many years. On occasion, he has the cars serviced at Benny's auto garage in Chester. He has held a valid Vermont driver's license for the last thirty years. His final resting place will be in Vermont (he purchased a burial plot in Chester in 1998). He attends church in Vermont. These findings by the Commissioner lead me to believe he is a Vermont resident. Apparently, I am wrong.

¶ 31. Alas, taxpayer has many of his bills, such as telephone and electric, sent to the business address in New York where a long time secretary of the family business writes the checks to pay the bills which taxpayer then signs. The secretary described herself in a letter to the Department in 2007 as taxpayer's "Health Care Assistant." The Commissioner noted that the bills were sent to the New York address "so they would not go unopened in Chester while he was away." The evidence shows that taxpayer's personal bank checks list his address in Chester, Vermont. So, according to the Commissioner, if you are ninety-three years old, as is taxpayer, and use a former employee in New York City to assist you with your finances, your claim of Vermont residency is called into question.

¶ 32. Unfortunately, taxpayer needs to travel to New York City for medical reasons, seeing one doctor once a month and another doctor twice a month. When he goes to New York for medical reasons, he stays one-to-three days each time in the apartment now rented by his son, using the second (guest) bedroom. The Commissioner noted that he has no doctors in Vermont, weighing this against his claim of residency. Lesson to be learned — don't use foreign doctors if you claim Vermont residency. Dartmouth-

Hitchcock Medical Center in Hanover, New Hampshire is apparently out.

¶ 33. Also detrimental to his claim of Vermont residency, taxpayer travels to visit his adult children in San Francisco, Chicago and London each year and, gasp, travels to Europe once or twice each year for two or three weeks and, the Commissioner notes, "to other places as well." Obviously, if you expect to be considered a Vermonter, you will not leave the state, ever.

¶ 34. In support of his claim of Vermont residency, the Commissioner found that taxpayer moved much of his furniture from New York to Vermont, including his Italian family antiques and art works. All his personal belongings and clothes are in Chester, along with items of family memorabilia, family albums and his father's and grandfather's guns.

¶ 35. At some point, taxpayer transferred all his assets to his sons and when he needs money his son provides. His property tax adjustment claim for 2007 shows household income of a $12,000 gift from his son. Taxpayer files no federal or state income tax returns so no personal income tax returns were available as evidence of residence or domicile. He receives mailings from AARP and from the Social Security Administration at the Chester address. But, oh dear, his AARP membership expired in 2009. He maintains a checking account with a Vermont bank. He shops in Chester. When asked to produce copies of credit card or debit card statements, taxpayer testified he doesn't use a credit card — "I always pay cash." For inexplicable reasons, this financial picture was held against him by the Commissioner.

¶ 36. For homestead purposes, a determination of domicile begins with a factual determination by the Commissioner of Taxes of the taxpayer's intent to establish permanent residence. 32 V.S.A. § 5401(14). An essential ingredient of the intent requirement is the intent to give up the old domicile and to remain at the new residence indefinitely. *Piche*, 152 Vt. at 232, 565 A.2d at 1285. The agency's determination of domicile will be upheld if it is fairly and reasonably supported by the findings of fact. *Id.* According to the criteria listed in the definition of "domicile," taxpayer long ago moved to Vermont with the intention of staying indefinitely. The only house he owns is in Chester, Vermont. Items of significant value to him are in Chester, he votes in Vermont, his cars are registered here, and he has a Vermont driver's license. When he visits New York, he stays at his son's apartment in the spare

room. He is retired but still assists the family business from time to time without remuneration. His involvement in the family business is not what is contemplated in § 3(d) "Relevant Factors" in the Department's regulations: " '[a]ctively involved' means the individual participates in the day-to-day operation, or in a policy-making position, of a business." Domicile Regulation § 3(d), 1 Code of Vt. Rules 10 060 039-6, http://www.lexisnexis.com/hottopics/codeofvtrules. There was no evidence presented that taxpayer was involved in the day-to-day operation or still in a policy-making position of any of the family New York businesses as anticipated by the regulation.

¶ 37. The Commissioner concluded that taxpayer "ha[d] not broken his ties to New York." She found his testimony that all his belongings were in Chester to be "not persuasive," apparently because he spends one or two weeks a month in New York and "might have some personal belongings there." Apparently she did not consider the fact that he might pack a suitcase for a one-to-three-day visit. She further found that the continuing availability of the New York apartment to taxpayer, though he no longer rents same, shows at least some continuing ties to New York. What it actually shows is a continuing tie to his son, who lets him stay at the apartment.

¶ 38. While taxpayer has been a registered voter in Vermont since 1992, the Commissioner found his use of the absentee ballot "lessened" the evidence that he is a registered voter in Vermont. This should be concerning to those of us who routinely use absentee ballots. The Commissioner relied heavily on the "one official record in evidence of [t]axpayer's statement of domicile" — a statement by an attorney for the family business, ADA Chester Corporation — that states taxpayer was a resident of New York. Of course, taxpayer never signed that brief. Not to mention that the brief was filed in a case against ADA Chester, a Vermont corporation, in response to an "adverse cutting notice" from the Department of Forests, Parks and Recreation. Taxpayer is active in ADA Chester, that is, he has active business involvement in a Vermont corporation. The Vermont corporation files federal and Vermont state tax returns. Taxpayer signs the income tax returns as president. But, uh oh, the tax returns are prepared by a New York accounting firm and their address is listed on the filings. This is the same firm that prepares tax returns for the other family businesses. Lesson to be learned: when you seek to

establish Vermont residency, drop the old accounting firm you used for decades and hire a Vermont firm.

¶ 39. Along this line of logic, the Commissioner wrote: "[i]t is reasonable for someone Taxpayer's age to have a secretary receive and process his bills for his signature, but Taxpayer does not have this done by a person located in Vermont; he continues to use the New York secretary for his routine paperwork. This is evidence of continuing ties to New York." So, as I understand this, using an accountant from another state, say in New Hampshire, will cast doubt on your claim to be a Vermonter. As to taxpayer's Vermont bank accounts, the Commissioner found that his Social Security checks were deposited directly into this account, but questioned why taxpayer didn't provide bank records. If there is no dispute that taxpayer maintains a Vermont bank account where his primary source of income is deposited, why does he have to expose his financial records to the Commissioner?

¶ 40. She then held that "[t]axpayer's age and ongoing health issues make it reasonable to continue to go to doctors who have treated him for years. This fact also demonstrates a continuing tie to New York as the domicile." This is utter nonsense. If it is reasonable to stay with a doctor who has treated you for years, what does it matter if he works in New York City or in Vermont? At least she considered his purchase of a burial plot on the side of evidence showing intent to remain in Vermont: "[s]ince purchase of the plot was in the year taxpayer asserts he became a permanent resident of Vermont [1998], it seems to weigh in favor of a change of domicile to Vermont."

¶ 41. The Commissioner concluded that the evidence in the case "quite possibly fails even as a preponderance in favor of a change of domicile and certainly does not meet the more stringent standard required." Amazing. The facts as found support taxpayer's assertion that he is a Vermont resident. In affirming the Commissioner's decision, the majority holds that "absent a prior adjudication by the Commissioner or a court, a taxpayer not born in Vermont or to parents domiciled in Vermont may be required to prove a change of domicile for purposes of determining eligibility for the income-sensitive adjustment to the statewide property tax." *Ante*, ¶ 20. What?

¶ 42. I dissent.