VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans VT 05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01612

Big Jay Tavern Inc. v. Vermont Department of Taxes

# DECISION ON TAXPAYER APPEAL

This is a Rule 74 appeal of a determination by the Vermont Commissioner of Taxes. In that determination, the Commissioner affirmed an assessment that followed an audit of the meal and alcohol sales tax liability of Appellant Big Jay Tavern, Inc. ("Big Jay"). The court affirms that determination.

## BACKGROUND

Big Jay Tavern was a bar and restaurant operating in Montgomery, Vermont. This case revolves around the details of two audits of Big Jay's meal and alcohol tax liability. The first was a 2016 audit of tax year 2014 ("2016 audit"), and the second was a 2019 audit of tax years 2016–2018 ("2019 audit"). This appeal attacks the Commissioner's determination on the 2019 audit. The issues flagged in that audit grew out of the 2016 audit, so this narrative begins there.

In 2016, the Vermont Department of Taxes audited Big Jay's meals and alcohol tax liability. That audit found that Big Jay's point-of-sale system ("POS") was not capturing all meal and alcohol sales. As a result, Big Jay had been underreporting its taxable sales, and so underpaying its taxes. The 2016 audit resulted in an assessment of over $24,000, including penalty and interest. Big Jay's accountant confirmed that the POS was not properly capturing sales and confirmed the audit finding. Big Jay did not appeal the assessment.

As a result of the 2016 audit, the Department concluded that Big Jay's POS likely failed to capture sales properly in the years following 2014. It asked Big Jay to amend its tax returns for 2015 and 2016. Big Jay fixed its POS and began calculating and reporting tax liability properly. Big Jay requested that the Department show leniency by reducing the amount of the 2016 audit assessment. The Department requested that Big Jay first complete the amendment of its 2015 and 2016 tax returns. The Department's agent, Erin Hill, advised Big Jay that once it completed its amendments, the

Department would recalculate Big Jay's total tax liability and determine whether it could grant an abatement.

In January 2017, Big Jay amended its 2015 and 2016 tax returns. As it turns out, however, it did so incorrectly. Instead of reporting the total amount of sales for each month, Big Jay reported only the amount by which its original returns had underreported those sales. As a result, the amended returns showed sales (and, correspondingly, tax liability) lower than the original returns. This led the Department to adjust Big Jay's tax liability downward and grant Big Jay a credit for the difference between the amount paid on the original returns and the amount calculated from the amended returns. The net effect of the adjustment was to give Big Jay a large credit to which it was not entitled.

On February 7, 2017, Big Jay received a statement of its account showing an unexplained credit to its tax account in excess of $17,000. It showed a remaining balance of only about $10,000. The following day, on February 8, 2017, Big Jay received a letter offering an abatement of the outstanding amount, reducing the total by $2,100 if Big Jay paid the within 20 days. Big Jay timely paid and so received the abatement. Big Jay now asserts that it understood the abatement to resolve its entire outstanding tax liability, including both the $2,100 noted in the settlement letter and the credit to its account of over $17,000, which resulted from its incorrect amendments. As a result, Big Jay did not pay most of the taxes it owed from the 2016 audit.

Two years later, in 2019, the Department received information from the IRS that prompted it to audit Big Jay for the years of 2016, 2017, and 2018. In doing so, it discovered the error in the amended 2015 and 2016 returns. Upon making this discovery, the Department corrected the error, recalculated Big Jay's taxes, and assessed the correct amount. This resulted in an assessment of over $27,000. Big Jay appealed that assessment to the Tax Commissioner, who held a hearing on October 5, 2022. The hearing officer took documentary and testimonial evidence from Big Jay, Big Jay's accountant, the Department, and the Department's field tax auditor. The field tax auditor described her calculations in detail and Big Jay's accountant agreed with the calculations. Big Jay argued that the Department's settlement letter was the final resolution of the matter and prohibited the Department from pursuing the tax assessment at a later date. The Commissioner decided in favor of the Department, prompting this appeal.

## DISCUSSION

On appeal, Big Jay does not articulate a coherent legal theory. Reading its briefing with the leniency generally afforded to *pro se* litigants, two arguments emerge. First, Big Jay argues that the

Department's 2017 settlement letter was the final resolution of its liability for the tax years in question. Second, it contests the Commissioner's findings of fact. Neither of these arguments succeeds.

Big Jay's first argument is cognizable, if at all, as a claim of estoppel. While Big Jay eschews this theory and takes issue with the Commissioner's characterization of the argument as one for estoppel, it does not articulate any other competent theory. The court notes in this regard that in its Principal Brief, Big Jay states, "Based on my conversation with the Compliance Officer that [sic] the 2014 audit and the amendments for 2015 and 2016 had been settled with this agreement." In its Reply Brief, Big Jay states, "Isn't Erin Hill a representative of the states tax department, and if a settlement letter is issued by her it is an official letter from the state." At the Tax Commissioner's October 5, 2022 Hearing, the Hearing Officer asked whether it was Big Jay's position that "the '16 [audit] was already settled so the Department can't come back and assess it" and Big Jay answered "Yes." These facts are sufficient to support the Commissioner's interpretation of the appeal as a claim for estoppel. Thus, instead of rejecting Big Jay's argument altogether on the basis of its failure to articulate a cogent theory, the court treats it as an assertion of estoppel. *See Quazzo v. Department of Taxes*, 2014 VT 81, ¶ 22, 197 Vt. 278 (applying the elements of estoppel where taxpayer eschewed an estoppel argument, but the "contentions amount[ed] to, in effect, an estoppel argument").

"The doctrine of equitable estoppel precludes another party from asserting rights which otherwise may have existed as against another party who has in good faith changed his position in reliance upon earlier representations." *My Sister 's Place v. City of Burlington*, 139 Vt. 602, 609 (1981). The elements of estoppel are:

> (1) the party to be estopped must know the facts;
> (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
> (3) the latter must be ignorant of the true facts; and
> (4) he must rely on the former's conduct to his injury.

*Id.* The Commissioner concluded that the elements of estoppel cannot be satisfied in this case. The Commissioner addressed the fourth element, citing the U.S. Court of Federal Claims for the proposition that "[h]aving to pay taxes which are legally assessed does not constitute the type of detrimental reliance necessary to invoke estoppel." *Bunce v. United States*, 28 Fed. Cl. 500, 506 (1993), *aff'd*, 26 F.3d 138 (Fed. Cir. 1994). This conclusion is supported by the Commissioner's findings of fact, which are themselves supported by the record. While evidence in the record may be sufficient to establish the second element, it is not sufficient to establish the first, third, or fourth elements. As the Commissioner indicated, Big Jay has not shown that the Department knew the facts

or that Big Jay was ignorant of the true facts. The record shows that Big Jay knew that it owed over $20,000 in taxes from the 2016 audit and that the amount of the abatement was only $2,100. Nor is there any evidence that Big Jay suffered any injury from any reliance on the settlement letter. In short, the Commissioner did not err in concluding that there was insufficient evidence to support an estoppel claim.

Moreover, even had Big Jay satisfied all elements of estoppel, the doctrine cannot apply here. "Estoppels against the government are rare and are to be invoked only in extraordinary circumstances." *In re McDonald's Corp.*, 146 Vt. 380, 383 (1985). The Department's "overlooking of an error in a return upon audit" cannot create estoppel. *Quazzo*, 2014 VT 81, ¶ 22 (holding that "tax authorities are not estopped by virtue of their prior treatment of a taxpayer's claims"). Here, there is no showing of extraordinary circumstances. Rather, it was Big Jay's own error that caused the Department's error. While there is no suggestion that Big Jay's error was deliberate, it would violate basic notions of equity to reward that error by applying estoppel in Big Jay's favor. *Cf. Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 15, 191 Vt. 76 ("[T]ax abatement is an equitable remedy, and thus the maxim that a party seeking an equitable remedy must come to court with clean hands is fully applicable").

Big Jay's second argument fares no better. Here, Big Jay argues that: (1) it was the Department's error, not its own error, that caused the overpayment issue, (2) the Department's agent, Erin Hill, incorrectly advised it that the amount stated in the settlement letter constituted its total then-current tax liability, and (3) the Department should have given him clearer instructions about how to file its amended tax returns. The record fully supports the Commissioner's determination on each of these issues.

It bears emphasis at the outset that Big Jay raised these issues before the Commissioner, who made findings on each issue. Those findings are entitled to deference. *See Close v. Superior Excavating Co.,* 166 Vt. 318, 321 (1997) ("We presume that decisions made within an administrative agency's area of expertise are correct, valid, and reasonable, absent a clear showing to the contrary."). "[J]udicial review of agency findings is ordinarily limited to whether, on the record developed before the agency, there is any reasonable basis for the finding." *Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294. Put another way, "the Commissioner's . . . findings should not be set aside unless clearly erroneous." *Morton Bldgs. Inc. v. Department of Taxes,* 167 Vt. 371, 374 (1997). Thus, the court's review is limited to determining whether the Commissioner's findings are supported by credible evidence. *See Coates v. Coates*, 171 Vt. 519, 520 (2000).

On Big Jay's first assertion, the Department argues that it was Big Jay's error that caused the overpayment issue. The Commissioner found for the Department on this issue. The incorrectly amended tax returns were part of the record; they demonstrate that instead of entering its total tax due in the field marked "Total Meals and Room Tax Due," Big Jay entered the difference between the incorrect amount of its first tax return and the correct total amount due. Thus, there is credible evidence in the record to support the Commissioner's finding, and so it must stand.

The Commissioner found that there was no evidence to support Big Jay's contention that Ms. Hill gave incorrect advice. This finding is supported by the record. The evidence includes Ms. Hill contemporaneous notes from her call with Big Jay. The notes do not support the allegation that she expressly informed Big Jay that the abatement of $2,100 would discharge its entire tax liability. Nor does Big Jay cite to any other evidence that supports this assertion. Moreover, even if the Commissioner had found that the Department's agent had given incorrect advice, "[i]n the absence of grounds for estoppel, the advice or opinion given by a government agency, though incorrect, does not bar later correction, even if there had been reliance on the government agent's statement." *Vermont Structural Steel v. State Dep't of Taxes*, 153 Vt. 67, 74 (1989). In short, even were the Commissioner's finding not supported, that would not warrant reversal.

On Big Jay's third assertion, Big Jay did not point to any evidence to support its claim that the Department should have given him clearer instructions for amending its tax returns. In its hearing before the Commissioner, Big Jay testified that it "amended it the way she told me to do it," without describing in any further detail how she led him astray. In his brief, he states, "I amended the returns exactly as instructed by the States Tax Compliance Officer." The Department's internal notes included a note from Ms. Hill from the day Big Jay spoke to her about amending his tax returns. That note states, "[Appellant] called in and I helped him through the payment process. Will follow up and abate the remaining penalty after payment hits." The Commissioner found in favor of the Department, relying on the written record of their calls from Ms. Hill's contemporaneous notes. *Cf. Vermont Structural Steel*, 153 Vt. at 75 (holding that where there is a written record and also parol accounts of what occurred, "it is best to rely on those statements and understandings reduced to a writing in settling tax disputes between taxing authorities and taxpayers"). And again, even if the Commissioner's finding in this regard were erroneous, that would be of no moment; again, "[i]n the absence of grounds for estoppel, the advice or opinion given by a government agency, though incorrect, does not bar later correction, even if there had been reliance on the government agent's statement." *Id.* at 74.

Finally, Big Jay also appears to make several other evidentiary challenges, citing accounting discrepancies that amount to a claim that the calculation of its taxes was incorrect. That calculation, however, is not at issue here. Big Jay did not contest the calculation below, and as noted above, it conceded that the Department's audit was correct. In its decision, the Commissioner found that "Ms. Roxanne Hurlburt, Taxpayer's accountant, confirmed the Department's audit finding," and that "Taxpayer did not appeal the 2014 assessment." Big Jay does not make clear how its observations regarding these discrepancies show an error below, or what that error may be. "Although pro se litigants receive some leeway from the courts, they are still bound by the ordinary rules of civil procedure." *Fox v. Fox*, 2022 VT 27, ¶ 39, 216 Vt. 460 (2022) (internal citations omitted). The Court has consistently held that it will not decide issues on appeal that have not been adequately briefed. *Persons v. Lehoe*, 150 Vt. 582, 587 (1988); *Cf. U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Thus, Big Jay's evidentiary challenges do not undermine the Commissioner's decision.

Electronically signed pursuant to V.R.E.F. 9(d): 8/5/2024 1:30 PM

_____
Samuel Hoar, Jr.
Superior Court Judge