STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | |

| | |
|---|---|
| Hannaford SD Revision Application | Docket No. 68-5-14 Vtec |
| Aubuchon (FH Plaza) SP Revision Applic. | Docket No. 69-5-14 Vtec |
| Automotion SP Revision Applic. | Docket No. 70-5-14 Vtec |

## DECISION ON THE MERITS

Martin's Foods of South Burlington (Applicant)[1] proposes to construct a 36,000-square-foot grocery store and 128-space parking lot (the Project) on Lot 15 of the Commerce Park subdivision in Hinesburg, Vermont (the Town). This Project is the subject of seven different appeals currently before this Court. A group of Hinesburg residents (Appellants) oppose the applications. This decision relates to the Project's two site plan amendment applications and one subdivision revision application.

As part of the Project, Applicant seeks to transfer a portion of the adjacent Automotion lot to Lot 15 in order to accommodate a farmers market. As a result of the transfer, the Automotion lot requires revisions to its site plan. These revisions are the subject of the Automotion site plan revision application, Docket No. 70-5-14 Vtec. The Project also requires changes to Lots 9 and 10 of the Commerce Park subdivision (the Aubuchon lot) to

---

[1] The owners of the Automotion lot (the Bernard A. Giroux Trust, June T. Giroux Trust, Victor J. Giroux Trust, and Ramona M. Giroux Trust) and the owner of the Aubuchon lot (Aubuchon Realty Company, Inc.) are co-applicants with Martin's Foods of South Burlington.

accommodate traffic mitigation measures. These changes are the subject of the Aubuchon site plan revision application, Docket No. 69-5-14 Vtec. Lastly, because the transfer of land to Lot 15 will alter the lot lines of two prior subdivision approvals, Applicant seeks to revise these subdivision approvals in the Hannaford subdivision revision application, Docket No. 68-5-14 Vtec.

The Town of Hinesburg Development Review Board (DRB) denied both the Automotion and Aubuchon site plan revision applications, and Applicant appealed those decisions here. The DRB denied the Hannaford subdivision revision application, and Applicant appealed the DRB's subdivision revision decision as well. Appellants have cross-appealed in all three maters. The Town of Hinesburg (Town) is a party in these matters.

In anticipation of trial, pre-filed testimony was submitted by Applicant and Appellants. The Town did not pre-file testimony; however, it did offer testimony and evidence during trial. The Court conducted a site visit on the morning of November 30, 2015. A merits hearing at the Environmental Division in Burlington followed the site visit and continued through December 2, 2015. At trial, Applicant was represented by Christopher D. Roy, Esq.; Appellants were represented by James A. Dumont, Esq.; and the Town was represented by Ernest M. Allen, III, Esq.

The facts and issues raised in these three related appeals are substantially similar. Furthermore, the same parties appear in all three matters. Thus, we address the three matters in a single decision. Based upon the evidence presented at trial, which was put into context by the site visit, the Court renders the following findings of fact and conclusions of law.

## Findings of Fact

1.      Lot 15 is one of fifteen lots in the Commerce Park subdivision. The subdivision is north of the Hinesburg Village center and is generally located in the triangle formed by Route 116, Patrick Brook, which parallels Commerce Street to its north, and Mechanicsville Road.

2.      The Automotion lot borders Lot 15 on its western boundary. The Automotion lot is part of the Giroux Building Supply subdivision. The boundary between the Automotion lot and Lot 15 forms the western boundary of the Commerce Park subdivision. Route 116 borders the Automotion lot to the west.

3.      Adjoining the Automotion lot to the south is the Giroux Auto Salvage lot (Giroux lot). The Giroux lot is also within the Giroux Building Supply subdivision.

4.     North of the Automotion lot are Lots 9 and 10 of the Commerce Park subdivision, which together form the Aubuchon (Firehouse Plaza) lot.  The Aubuchon lot is located on the south side of Commerce Street at the intersection of Route 116 and Commerce Street.

**I.     Subdivision Revision**

5.     The Automotion lot currently has an area of 1.76 acres.  The proposal is to reduce the lot size to 1.31 acres by transferring 0.32 acres to Lot 15 and 0.13 acres to the adjacent Giroux lot.

6.     Lot 15 is presently 4.56 acres, and the transfer will increase its size to 4.88 acres.

7.     The Giroux lot is currently 2.35 acres and the transfer will increase its size to 2.48 acres.

8.     The transfer of .32 acres from the Automotion lot to Lot 15 requires revision to the subdivision boundaries of two previously approved subdivisions—the Commerce Park subdivision and the Giroux Building Supply subdivision.

9.     The Commerce Park subdivision approval was granted on December 27, 1987.

10.    The Giroux Building Supply subdivision approval was granted on July 27, 1987.

11.    The Hannaford subdivision revision application was submitted by Applicant on October 15, 2013, and it was deemed complete on November 7, 2013.

12.    The parties agree that the applicable version of the Town of Hinesburg Zoning Regulations are dated November 5, 2013 (2013 Regulations), submitted as Town Ex. 1a, and the applicable Town of Hinesburg Subdivision Regulations are dated October 12, 2009 (2009 Subdivision Regulations), submitted as Town Ex. 2a.

13.    On May 6, 2014, the Town of Hinesburg Development Review Board (DRB) denied the Hannaford subdivision revision application.  Applicant appealed that denial to this Court, and Appellants cross-appealed.  That appeal was given Docket Number 68-5-14 Vtec (Hannaford Subdivision Appeal).

**II.    Automotion Site Plan**

14.    The Automotion site is owned by the Bernard A. Giroux Trust, June T. Giroux Trust, Victor J. Giroux Trust, and Ramona M. Giroux Trust (collectively, the Giroux Family Trust).

15.    The site plan for the Automotion site was originally approved by the DRB on December 9, 2005.

3

16.     Applicant filed a site plan amendment application for the Automotion site on October 14, 2013, and it was deemed complete in November of 2013.

17.     On May 6, 2014, the DRB denied the application to revise the Automotion site plan and Applicant timely appealed that denial to this Court.  That appeal was given Docket Number 70-5-14 Vtec (Automotion Appeal).

18.     The parties agree that the 2013 Regulations govern the Automotion site plan.

19.     The site is currently used as an auto repair facility.  The site contains a Quonset hut and gravel parking area for 31 vehicles.

20.     The Giroux lot to the south is also owned by the Giroux Family Trust.

21.     Due to the reduction in lot size as a result of the .32-acre transfer to Lot 15, the Automotion lot will lose about 12 parking spaces and will require changes to parking, landscaping, and stormwater drainage for the lot.

22.     Existing parking is inadequate to meet current business operations.

23.     The Automotion site plan proposes a total of 60 spaces, with 28 spaces in the front yard.

24.     Proposed parking is located east (18 spaces), north (14 spaces), and west (28 spaces) of the existing Quonset hut building.

25.     Curb cut access to Route 116 remains unchanged.

26.     The parking lot surface will be a combination of gravel and pavement, all of which is considered impervious surface for lot coverage limits.

27.     Existing landscaping includes four crabapple and four cherry trees located along Route 116 and a white cedar hedge located along the eastern lot boundary with Lot 15 (in the area that will be transferred to Lot 15 for the farmers market).  The crabapple and cherry trees will be retained, and the hedge will be relocated to the northwest corner of the lot.

28.     Proposed additional landscaping will be generally located on the west, north, and south sides of the proposed parking areas and will include twenty-two mugo pines (mature heights of 3 feet), thirty daylilies (mature heights of 2 feet), twenty-one redosier dogwood trees (mature heights of 6 feet), fifteen Japanese spireas (mature heights of 3 feet), and six red maples (mature heights of 50 feet).

29.     Currently, much of the stormwater runoff from the Automotion site drains east into a channel between Lots 10 and 11.

30. Applicant proposes to redirect the stormwater so that most is captured by the Lot 15 stormwater system. Some will be redirected westerly to sheet flow across a grass area.

### III. Aubuchon (Firehouse Plaza) Site Plan

31. The Aubuchon lot, also known as the Firehouse Plaza, is located on Lots 9 and 10 of the Commerce Park subdivision, in the northwest corner of the subdivision immediately southeast of the Commerce Street/Vermont Route 116 intersection.

32. Aubuchon Realty Company, Inc. is the landowner of the property.

33. The previous site plan for the Aubuchon lot was approved by the DRB on February 21, 2001.

34. Applicant filed a site plan amendment application on October 15, 2013, and it was deemed complete on November 7, 2013.

35. On May 6, 2014, the DRB denied the application to revise the Aubuchon site plan, and Applicant timely appealed that denial to this Court. That appeal was given Docket Number 69-5-14 Vtec (Aubuchon Appeal).

36. The parties agree that the Aubuchon Appeal is subject to the 2013 Regulations.

37. The lot currently contains an Aubuchon Hardware store, a shopping plaza with several other commercial businesses, and a 52-space parking lot.

38. Access to the plaza is presently provided by a 30-foot-wide curb cut off of the south side of Commerce Street in the northwest corner of the lot near the intersection with Route 116.

39. Applicant proposes changes to the parking layout, the site's internal traffic circulation, and landscaping. Additionally, Applicant proposes to relocate the curb cut access farther east on Commerce Street, away from the Route 116 intersection.

40. The Aubuchon site plan increases the number of parking spaces from 52 to 59, with some modification to space layout.

41. The increase in the number of parking spaces is realized through reconfiguration. No additional paving is proposed.

42. Existing landscaping includes fourteen trees along the border of the lot with Route 116 and Commerce Street, and twenty-seven deciduous and evergreen shrubs. All existing landscaping is proposed to remain (some trees will be relocated)

43. There are six street trees (crabapple and/or cherry) on the property along Commerce Street. Two of these trees are proposed to be relocated from the new point of access to the

5

area of the existing curb cut that will be closed. The current health of the trees that are proposed for relocation is marginal.

44.     There are two landscaped islands in the central portion of the parking area.

45.     Additional landscaping includes six mugo pines (mature heights of 3 feet), twelve bumald spireas (mature heights of 3 feet), twenty-three spreading yews (mature heights of 3 feet), and nineteen fragrant sumacs (mature heights of 5 feet). These plantings will be located along the lot's northern border with Commerce Street and western border with Route 116.

46.     The additional vegetation will not fully block views of vehicles in the parking area for people traveling along Route 116 or Commerce Street. As vegetation matures, more screening will be realized.

47.     Surface water and stormwater accumulate at times along the northeastern corner of the lot along Commerce Street in the area where the relocated curb cut is proposed. No culverts or other stormwater controls are proposed on the Aubuchon lot.

48.     Currently, there is a 15-inch culvert between Lots 10 and 11 of the Commerce Park subdivision that runs under Commerce Street. In order to improve drainage of an existing swale between Lots 10 and 11, Applicant will replace the 15-inch culvert with an 18-inch culvert and lower the elevation of the culvert by several inches.

## Conclusions of Law

Although the Town participated in all three matters, only Applicant and Appellants appealed the DRB's decisions and submitted statements of questions in the two site plan appeals and the Hannaford Subdivision Appeal. Only issues raised in the statements of questions are preserved for our de novo review. See V.R.E.C.P. 5(f). We first address issues raised by Appellants in opposition to the three applications, and then turn to issues raised by Applicant.

### I.     Appellants' Arguments in Opposition

Appellants' Statement of Questions is identical in all three matters and will be addressed as one. Through their Statement of Questions, Appellants raise two issues, both of which focus on alleged procedural defects in the applications rather than on the substance of the applications. First, Appellants challenge the adequacy of the notice provided by Applicant under 24 V.S.A. § 4464, claiming that notice for the site plans and subdivision application was

deficient and misleading because Applicant noticed the applications separately from, and without reference to, the Hannaford conditional use application, Docket Number 129-9-12 Vtec, and the Hannaford site plan application, Docket Number 163-11-12 Vtec (Question 3). Second, Appellants claim that Applicant impermissibly seeks to amend a 2005 conditional use permit for the Automotion without proper notice and with only a site plan revision application. (Questions 4 and 5). For the following reasons, we find Appellants' arguments fail to establish grounds to deny the Automotion and Aubuchon site plans or the Hannaford subdivision revision application.

      a.   <u>Adequacy of Notice</u>

Appellants argue that notice for the three municipal zoning permits that are the subject of this decision was misleading and invalid because Applicant failed to include notice of these three applications when it noticed the earlier Hannaford conditional use application, Docket Number 129-9-12 Vtec, and the Hannaford site plan, Docket Number 163-11-12 Vtec (Question 3).[2] In other words, Appellants contend that because all of the permits are necessary and integral to the success of the Project, it was improper and materially misleading under 24 V.S.A. § 4464 to notice and review the Hannaford conditional use and Hannaford site plan applications separate from the Automotion and Aubuchon site plans and the Hannaford subdivision application. We disagree.

Appellants' argument misconstrues the notice requirement of Section 4464 and the scope of our review. 24 V.S.A. § 4464 provides, "All development review applications before an appropriate municipal panel under procedures set forth in the chapter shall require notice . . . ." Here, each individual zoning permit application was given proper notice under Section 4464. Contrary to Appellants' assertion, and as we explained in our March 4, 2015 decision on multiple pretrial motions, there is nothing in the relevant statutes or Regulations that require notice for any and all related permits be given at one time. See <u>Hinesburg Hannaford CU Approval</u>, Nos. 129-9-12, 163-11-12, 68-5-14, 69-5-14, and 70-5-14 Vtec, slip op. at 15 (Vt. Super. Ct. Envtl. Div. March 4, 2015) (Walsh, J.). Section 4464 requires notice that is

---

[2] Appellants also assert that notice for the Hannaford site plan and Hannaford conditional use application was also invalid because those applications did not include notice of the Aubuchon and Automotion site plans or the Hannaford subdivision revision. The adequacy of notice for the Hannaford site plan and Hannaford conditional use application are beyond the scope of our review in this decision. Nevertheless, for the reasons explained in this decision, the notice was not misleading or invalid.

application-specific.  See 24 V.S.A. § 4464 (a)(1) and (2).  While that notice must provide a description of the proposed project, nowhere does the Statute suggest any and all related matters must be noticed simultaneously.  Therefore, the fact that Applicant noticed the Hannaford conditional use application and the Hannaford site plan separate and apart from the three applications under consideration here does not render any of the applications misleading or invalid.  The Court may properly consider each permit application as a distinct matter.  We therefore answer Appellants' Question 3 by concluding that notice for each of the three applications now before us was proper and in no way misleading or invalid.

b.    Necessity of a Conditional Use Application

Appellants, through their Questions 4 and 5, raise four challenges to the Automotion site plan.  First, Appellants argue that the site plan is improper because it will amend conditions of a prior conditional use permit for the Automotion lot without the necessary conditional use revision application.  Second, they claim that without a conditional use revision application the Automotion site plan is improper because Applicant has not sought a non-conforming use approval or a variance.  Third, Appellants assert that the number of parking spaces proposed in the Automotion site plan is prohibited by the 2013 Regulations.  Fourth, and finally, Appellants contend that this Court does not have jurisdiction to grant a change in the number of parking spaces specified in a conditional use permit as there has been no notice of an application to amend the conditional use permit nor has one been considered by the DRB.  Appellants' arguments misread the relevant zoning provisions, misconstrue the triggers for conditional use approval, and fail to establish how a conforming use or variance is relevant to the site plan.

The Automotion lot was granted conditional use approval to operate an auto repair facility in the Village Zoning District in 2005.[3]  The 2013 Regulations do not require an additional conditional use review when the proposed site plan changes do not alter or expand the prior approved use.  2013 Regulations § 4.2.  Currently, available parking at the Automotion lot is inadequate, and, as a result of the transfer of .31 acres to Lot 15, existing parking spaces will be lost.  The proposed site plan changes seek to adequately accommodate the current parking needs of the facility and to improve circulation on the lot, and also provide extensive

_____

[3] In the Village Zoning District, the district where the Automotion lot lies, automotive repair is a listed conditional use.  2013 Regulations § 3.5.6(18).

landscaping for the expanded parking. The site plan does not, however, alter or expand the current use of the lot—the operation of an auto repair facility.

The fact that the number of parking spaces at the Automotion lot will be increased does not equate to an expansion or alteration of the use of the Automotion site. The parking changes are designed to accommodate current needs, not to enable the operation to significantly expand. Moreover, improving the parking and circulation at the site was expressly considered by the DRB in their 2005 conditional use approval, and the DRB directed Applicant to do so through a site plan amendment. See Appellants' Reply to Mot. for Partial Summ. J. and Cross-Mot for Summ. J., Ex. A at 5, filed Oct. 6, 2014. ("If experience indicates inadequate parking or traffic flow, the Applicant shall immediately present proposed modifications of the *site plan*, and receive approval of them.") (emphasis added). Such alterations, however, were not considered an expansion or alteration of the use subject to conditional use review. We therefore conclude that the site plan changes Applicant proposes are entirely within the proper purview of a site plan amendment, and further, the fact that no conditional use permit revision has been sought does not deprive this Court of jurisdiction to review the Automotion site plan application.

Appellants next suggest that Section 5.10—nonconforming uses—restricts Applicant's ability to increase the number of parking spaces through a site. Section 5.10, however, does not apply to the Automotion lot. Section 5.10 applies to non-conforming uses and non-complying structures. 2013 Regulations, § 5.10 ("The following provisions shall apply to all structures and uses existing on the effective date of this Regulation which do not conform to the requirements set forth in this Regulation, and to all structures and uses that in the future do not conform by reason of any subsequent amendment to this Regulations."). The Automotion lot has a conditional use approval, and thus complies with the Regulations. See id. § 4.2. As we explained above, the proposed changes to the lot do not render the structure or use non-compliant.

Lastly, we turn to Appellants' argument that the number of spaces proposed is prohibited by the 2013 Regulations. Appellants point to Section 5.6.3 as restricting the allowed parking at the Automotion lot. As we explain below in Part II.b.(1) of this decision, Section 5.6.3 provides parking requirements for *new* commercial and industrial structures. The Automotion site plan proposes no new structures. Thus, Section 5.6.3 does not restrict the number of

9

parking spaces permitted at the lot. Further, we are aware of no other provision of the 2013 Regulations that expressly prohibits Applicant from increasing the number of parking spaces for the existing structure and use on the Automotion lot from 31 to 60. The 2013 Regulations provide parking guidelines for the DRB to consider, but does not place a ceiling on the number of allowed spaces for the existing structure. See 2013 Regulations §§ 4.3.4(2) and 5.22.2. As a result, no variance is required and the Automotion site plan application is not barred because of the proposed number of parking spaces.

We therefore answer Appellants' Questions 4 and 5 with the conclusion that it was appropriate and lawful for Applicant to seek to alter the number and location of parking spaces at the Automotion lot by submitting only a site plan revision application.

## II.   **Applicant's Questions**

In our March 4, 2015 pre-trial decision we substantially answered Applicant's Questions 2–6, 8, and 9 of the Aubuchon Appeal and 2–6 and 8 in the Automotion Appeal. Together these questions challenged the constitutionality and enforceability of Sections 4.3.2, 4.3.4, 4.3.8(2), and 5.5 of the 2013 Regulations on vagueness grounds. There we explained that these sections of the Regulations provide sufficiently clear standards to be enforceable. Hinesburg Hannaford CU Approval, Nos. 129-9-12, 163-11-12, 68-5-14, 69-5-14, and 70-5-14 Vtec, slip op. at 6–12 (Vt. Super. Ct. Envtl. Div. Mar. 4, 2015) (Walsh, J.). We also concluded that Section 4.3.4 establishes standards that must be considered in our review of the site plan applications, but does not establish prerequisites for approval. Id. at 12–13. Lastly, we found that there is clear authority in the enabling legislation and in the Regulations for imposing reasonable conditions on Applicant's site plan approval. Id. at 14. To the extent that we did not conclusively answer Applicant's Questions 2-6, 8, and 9 of the Aubuchon Appeal and 2-6 and 8 of the Automotion Appeal prior to trial, we answer them here by concluding that the 2013 Regulations provide clear and enforceable standards; that Section 4.3.4 establishes standards that must be considered but does not establish mandatory prerequisites for approval; and that reasonable conditions may be imposed as part of our site plan approval.

Applicant's remaining questions are Questions 1, 7, 10, and 11 in the Aubuchon Appeal; Questions 1, 7, 9, and 10 in the Automotion Appeal; and Questions 1, 2, and 3 in the Hannaford Subdivision Appeal.

10

a.    The Aubuchon Appeal

Question 1 merely restates the ultimate issue in this appeal—whether the application should be granted—and fails to raise a discrete issue for our review.  Below we address each of Applicant's more specific questions and, as we find the Aubuchon site plan, with conditions, complies with the 2013 Regulations, we also answer Question 1.

Applicant's remaining questions in the Aubuchon appeal ask us to consider whether the project as proposed affords adequate landscaping to satisfy Sections 4.3.4 and 4.3.8 of the 2013 Regulations (Question 7), and whether it is proper to require Applicant to mitigate stormwater problems that are not a direct result of the Project (Questions 10 and 11).  We address these questions in turn.

1.    Adequacy of Landscaping

Section 4.3.4 and 4.3.8 of the 2013 Regulations provide the relevant landscaping standards.  Section 4.3.4(3) directs the Court to consider the adequacy of the landscaping when reviewing a site plan revision application.  Section 4.3.8—Landscaping Plan & Standards— provides several specific requirements for a landscaping plan.  Relevant here are subsections 4.3.8(2) (b) and (c).  Subsection 4.3.8(2)(b) states that "[t]here shall be a mix of large canopy tree species within each landscaping plan." Subsection 4.3.8(2)(c) declares that "deciduous shade trees shall be utilized to provide shade and reduce glare, and large expanses of parking shall include landscaped islands."

The proposed landscaping includes preserving 12 of the existing street trees and relocating two others, as well as installing six pine trees and 54 smaller plants and shrubs. Based on Applicant's revised and enhanced landscaping plans, we conclude that the landscaping proposed for the Aubuchon lot generally satisfies the requirements in Sections 4.3.4 and 4.3.8 with two exceptions: (1) the landscaping plan lacks adequate large canopy trees along Commerce Street and (2) some of the existing trees are in poor health and do not provide adequate shade and screening.  We therefore conditionally approve the landscaping plan for the Aubuchon lot by requiring the installation of two red maple trees,[4] similar to those proposed for the Automotion lot, along Commerce Street at appropriate locations to be determined by Applicant and Aubuchon Realty Company, Inc. in consultation with the Town.

---

[4] The trees will grow to an approximate height of fifty feet at maturity.

Further, the lot owner[5] shall be responsible for replacing any trees, shrubs, or other plantings on the Aubuchon lot that die or are in visibly poor health.

### 2. Mitigation of Stormwater

Both before and at trial, the Town raised concerns about an area where stormwater currently ponds in the northeast corner of the Aubuchon lot where the relocated access drive will connect with Commerce Street. The Town suggests that a culvert under the relocated access drive is needed to alleviate the ponding. Applicant challenges the authority of the Court to impose stormwater mitigation measures to address drainage issues that currently exist on the Aubuchon lot, claiming it is improper to require mitigation of conditions that are not the result of the proposed site alterations (Question 10). In a related challenge, Applicant also questions whether it may be required to install stormwater measures to address drainage issues that exist on adjacent property, but that are not caused by the Project's impacts (Question 11).[6] This second challenge appears to relate to an outdated version of the proposed stormwater mitigation measures that had called for the improvement of a drainage swale on the adjacent Lot 11 (the Dark Star lot). As currently proposed, however, no work is to be done on the Dark Star lot and there was no evidence that the Town is requesting that Applicant address drainage on an adjacent lot. We therefore conclude that Question 11 is moot and we will not address it.

Turning to Applicant's Question 10, Section 4.3.4(6) directs this Court to review the proposed site plan to ensure the proposal provides for adequate drainage and control of stormwater. Regardless of when the issue arose, it is our task to consider whether the revised lot complies with Section 4.3.4(6).

---

[5] The Aubuchon Realty Company, Inc., as the land owner of the Aubuchon lot, was a co-signatory on the Aubuchon site plan application. Municipal land use permits apply to and run with the land. See 24 V.S.A. § 1154(a)(6) (requiring municipal land use permits to be recorded); 24 V.S.A. § 4449(c) (same); cf. Bianchi v. Lorenz, 166 Vt. 555, 558 (1997) (holding that zoning violations could constitute a breach of the covenant against encumbrances), superseded by statute, 1999 No. 125, codified at 27 V.S.A. § 612(a). Thus, Aubuchon Realty Company, Inc., or its successors or assigns, is responsible for on-going compliance with our approval. We leave it to the individual parties to further allocate any burdens.

[6] Applicant's Question 10 asks whether the Town, and this Court on review, may require Applicant to install a culvert under the relocated entrance to mitigate an existing stormwater condition. Question 11 asks the related question of to what extent site plan approval may be conditioned upon mitigating drainage issues on an adjacent property rather than mitigating impacts from the project.

The proposed site plan will relocate the existing entrance away from the Commerce Street/Route 116 intersection to the northeast corner of the Aubuchon lot. Based upon the evidence before the Court, stormwater currently collects and ponds at this location. By locating the new entrance in this area it is likely that the inadequate drainage will be exacerbated. Therefore, we condition our approval on the installation of a culvert under the new access drive to ensure that the lot has adequate drainage and properly manages stormwater regardless of whether those issues exists independent of the proposed changes. We therefore answer Applicant's Question 10 by concluding that a culvert under the new access drive is required mitigation for existing stormwater drainage issues.

As conditioned, we conclude that the Aubuchon site plan application meets the applicable landscaping requirements. Further, we conclude that, as conditioned, the site plan will adequately address stormwater and drainage issues. For the foregoing reasons, we answer Applicant's Question 1 by approving the Aubuchon site plan application, Docket No. 69-5-14 Vtec.

### b. The Automotion Site Plan

As part of the Automotion site plan, Applicant proposes to increase parking at the lot from 31 to 60 spaces, allocating 21 of the new spaces in the front (i.e., west) yard (increasing the front-yard parking from 9 to 28 spaces). Of the remaining parking spaces, 18 will be located to the east of the Quonset hut, and the remaining 14 will be to the north of the structure. In addition, Applicant will significantly increase the number and variety of plants and trees on the lot to screen and soften views of the parking area.

As in the Aubuchon Appeal, Applicant's Question 1 is the catch all—should the application be granted. Applicant's remaining three questions can be characterized as raising the following three issues: first, whether the parking requirements of Section 5.6.3 apply only to new structures (Question 9); second, whether the site plan provides adequate landscaping under the 2013 Regulations (Question 7); and third, whether Applicant's proposed increase in parking is permitted under the standards and criteria for site plan approval (Question 10).

### 1. Applicability of Section 5.6.3

In pre-filed direct testimony and at trial, Appellants argued that Applicant's proposal to increase parking at the Automotion lot violates Section 5.6.3 of the 2013 Regulations because

the plan allocates more than 20% of the total parking spaces for the lot to the front yard without adequate landscaping.  In response, Applicant argues that Section 5.6.3 places no strict limit on front yard parking because Section 5.6.3 only restricts parking for new structures, not front yard parking for existing structures.  Section 5.6.3 provides:

> Parking and loading areas: Parking and loading areas for any new structures shall be located in the side or rear yards of the structure.  Where sufficient screening is provided, and with DRB approval, up to 20% of the total number of parking spaces may be located in the front yard of the structure.  If more than one structure is served by the parking area, the parking area may be located in the front yard of half of the structures.

2013 Regulations § 5.6.3.  We interpret this provision of the Regulations as we do statutes.  See In re Williston Inn Group, 2008 VT 47, ¶ 14 183 Vt.  621.  If clear, we will use the plain meaning of the language.  Id.

Based on a plain reading, we conclude that Section 5.6.3 only limits parking for new structures.  The first sentence of the paragraph establishes the rule: parking for new structures cannot be in front yards.  The second sentence of the paragraph is an exception to this general prohibition, not a new rule applying equally to old and new structures alike.  We thus answer Applicant's Question 9.[7]  We do note, however, that there are other relevant provisions that may impose restrictions, including the landscaping requirements of Section 5.22.2.

## 2.        Landscaping

As in the Aubuchon site plan, Sections 4.3.4 and 4.3.8 of the 2013 Regulations provide the primary landscaping standards.  Of particular relevance here are Subsections 4.3.8(2)(b), requiring that "[t]here shall be a mix of large canopy tree species within each landscaping plan," and 4.3.8(2)(c), declaring that "deciduous shade trees shall be utilized to provide shade and reduce glare, and large expanses of parking shall include landscaped islands."  In addition, Section 5.22.2 requires that where new parking spaces are proposed for the front yard of an existing building, the parking must be "well screened" in order to receive site plan approval.

---

[7] In further support of our conclusion, we note that a different section of the Regulations, Section 5.22.2, expressly regulates parking for new and existing buildings, while Section 5.6.3 only expressly identifies new structures.  Based on their express recognition in 5.22.2 of the often alternative standards for new and existing structures, if the drafters intended for Section 5.6.3 to govern existing as well as new structures, we would expect them to have expressly stated so.  We therefore read the absence of any mention of existing structures in 5.6.3 as indicative of the drafters' intent to only regulate new structures.

The Town has raised concerns with the adequacy of Applicant's proposed landscaping under Section 4.3.8(2)(b) and (c), and has suggested that the health and variety of the trees lining Route 116 are inadequate to shade the increased front yard parking, and that there should be landscaping within the parking area. The Town also challenges the adequacy of screening under Section 5.22.2, arguing that the screening is inadequate because even with the proposed plantings parked vehicles will still be visible from Route 116.

Applicant's proposed plan calls for over 90 new plantings—a mix of shrubs and ground cover and several large trees including two red maples. Applicant's plan designates many plantings for the edge along Route 116. The landscaping is designed to screen the parking from the road and bordering lots and break up sight lines. The parking lot is not expansive, however, and Applicant must work within the confines of the lot. Considering the heavily landscaped border around the lot, landscape islands are not necessary. Further, while the Town argues that cars in the Automotion lot will still be visible from the street even with Applicant's proposed plantings, we can find no requirement in the 2013 Regulations that the parking area must be completely obstructed from view for those passing along Route 116. We do not consider the term "well screened" to require the proposed plantings to occlude any and all view of what lays beyond the screen. Rather, we understand landscape screening to serve as visual break that makes an object or structure less pronounced and less noticeable.[8] Therefore, we conclude that the fact that cars parked in the Automotion lot may still be somewhat visible with the plantings in place does not by itself render the site plan insufficient.

There was evidence presented that several of the existing street trees are in visibly poor health. As in the Aubuchon appeal, the lot owner shall be responsible for replacing any dead or dying trees, or any landscape plantings in visibly poor health.[9] As conditioned, we answer

---

[8] The term "well screened" is not defined in the Zoning Regulations. Were the Regulations to require the lot be "completely" or "fully" screened, the Town may have a stronger argument. The use of the term "well," however, implies a lower standard.

[9] The Bernard A. Giroux Trust, June T. Giroux Trust, Victor J. Giroux Trust, and Ramona M. Giroux Trust, as the land owners of the Automotion lot, were co-signatories with Martin's Foods of South Burlington on the Automotion site plan application. Municipal land use permits apply to and run with the land. See 24 V.S.A. § 1154(a)(6) (requiring municipal land use permits to be recorded); 24 V.S.A. § 4449(c) (same); cf. Bianchi v. Lorenz, 166 Vt. 555, 558 (1997) (holding that zoning violations could constitute a breach of the covenant against encumbrances), superseded by statute, 1999 No. 125, codified at 27 V.S.A. § 612(a). Thus, the Bernard A. Giroux Trust, June T. Giroux Trust, Victor J. Giroux Trust, and Ramona M. Giroux Trust, or any successors or assigns, are responsible for on-going compliance with our approval. We leave it to the individual parties to further allocate any burdens.

Applicant's Question 7 by concluding that Applicant's landscape plans for the Automotion lot meet the standards expressed in Sections 4.3.4, 4.3.8, and 5.22.2 of the 2013 Regulations.

### 3.    Increased Parking

We interpret Applicant's Question 10 to ask whether the increase in parking at the Automotion lot is prohibited by the 2013 Regulations. Aside from the issues already discussed, neither Applicant nor any other party presented additional argument related to this question. Based on our independent review of the 2013 Regulations, we conclude that there is no outright ban on increasing the number of parking spaces at an existing building from 31 to 60, with 28 spaces to be located in the front yard. The only apparent restriction for such an increase is Section 5.22.2's requirement that the front yard parking must be well screened. We therefore answer Applicant's Question 10 by concluding that the proposed increase in parking at the Automotion lot is not prohibited so long as it is well screened, and because we found the proposed screening is adequate, the site plan meets the requirements of Section 5.22.2.

### 4.    Site Plan Approval

Because we conclude that, as conditioned, the Automotion site plan complies with all relevant landscaping standards in the 2013 Regulations, and, as there is no evidence of any other applicable restrictions for the site plan application, we approve Applicant's Automotion site plan application, Docket No. 70-5-14 Vtec.

### c.    The Hannaford Subdivision Application

As Appellants have failed to raise any specific challenge in the Hannaford subdivision appeal, our review here is brief. Of the three remaining questions raised by Applicant, we first consider Applicant's Questions 1 and 2, which we interpret as asking the broad question of whether the subdivision revision application should be granted. As we are not pointed to any specific provision of the relevant regulations by Applicant or by Appellants' arguments in opposition, we do not conduct an exacting analysis. Nevertheless, after a review of the relevant subdivision and zoning regulations, we see no bar to the subdivision revision. We therefore turn to the sole remaining question, Applicant's Question 3.

While phrased in such a way as to question the DRB's decision to deny the initial application, we interpret Question 3 to ask whether the Hannaford subdivision application's impacts to parking at the Automotion lot have been adequately addressed. It appears that the

16

DRB denied the subdivision revision application due to concerns with the resulting decrease in parking at the Automotion lot and stormwater issues on the Aubuchon lot.[10] These concerns, however, have been fully addressed in Applicant's revised site plan applications, and, as conditioned, the Automotion and Aubuchon site plans comply with all relevant provisions of the Regulations. We therefore answer Applicant's Question 3, concluding that the subdivision revisions will not cause either the Automotion or Aubuchon lots to violate applicable regulations.

Therefore, based on our review of the evidence and testimony, and considering our conditions imposed in approving the site plans discussed above, we conclude that Applicant's subdivision revision application fully complies with the 2013 Regulations and the 2009 Subdivision Regulations. We therefore approve Applicant's subdivision revision application in the Hannaford Subdivision Appeal.

## Conclusion

The three related municipal zoning applications, the Aubuchon site plan, Docket No. 69-5-14 Vtec; the Automotion site plan, Docket No. 70-5-14 Vtec; and the Hannaford subdivision revision application, 68-5-14 Vtec; are hereby **APPROVED** with the following conditions.

- For the Aubuchon site plan, the Aubuchon lot owner shall plant two additional red maple trees along Commerce Street with an exact location to be determined by Applicant, Aubuchon Realty Company, Inc., and the Town. Furthermore, the Aubuchon lot owner shall be responsible for replacing any plantings that die or are in poor health. Lastly, installation of a culvert under the new access drive is required to address current ponding and drainage issues in the northeast corner of the lot.

- For the Automotion site plan, the lot owner shall be responsible for promptly replacing any plantings that die or are in poor health.

---

[10] These issues remained despite Applicant's proposals in the related site plans because the site plan applications were denied.

We place no additional conditions on the Hannaford subdivision revision application.  A Judgment Order accompanies this decision.  This concludes the matters before the Court.

Electronically signed on April 12, 2016 at 09:19 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

18